**Carroll Dwayne YOUNG, Appellant,**

v.

**The STATE of Texas.**

**No. 904–02.**

Court of Criminal Appeals of Texas, En Banc.

June 9, 2004.

Kenneth W. Smith, Houston, for Appellant.

Donald W. Rogers, Jr., Asst. DA, Houston, Matthew Paul, State's Atty., Austin, TX, for State.

WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

This case requires us to decide two issues: May a defendant preserve error for appeal by moving for a mistrial without first making an objection and requesting an instruction to disregard? If he may, is it error to overrule such a motion for mistrial when an instruction to disregard could not have cured the harm of the objectionable event? Our answer to each question is, yes.

The appellant was convicted of aggravated sexual assault and sentenced to 75 years' imprisonment and a $5,000 fine. The record shows that the following exchanges occurred during voir dire examination of the prospective jurors:

THE COURT: Is it Mrs. Valdez?

VENIREPERSON: Yeah. I'm not sure if this is the appropriate time. I've been trying to figure out when it is. But my background, my work—I've worked a lot with inner city youth in a program and I've worked with a lot of sexual assault children. I just don't think I can be fair. And he needs to have a fair person because I've worked on the children's side.

THE COURT: I understand. Are you saying because of that, when you say you can't be fair, does that mean that if the State doesn't prove their case beyond a reasonable doubt, you would find him guilty anyway?

VENIREPERSON: It's like the policeman that you talked about that comes in with a certain level of experience or knowledge. I just—I feel that I'm going to be weighted in one way. And I don't think I can be fair.

THE COURT: I understand that. And I'm trying to pinpoint. When you say you can't be fair, that's kind of global. I'm trying to figure out—excuse me— I'm trying to see if—we want to pinpoint you. When you say you can't be fair, what do you mean when you say you can't be fair?

VENIREPERSON: Well, of course, I don't know any details. And it de-

pends on how old the child was. But what I have found in 25 to 30 years of this work is that usually when a child says something has been done like this, usually the majority of cases I've worked with, it's the truth.

THE COURT: All right.

VENIREPERSON: So what I'm trying to say—

THE COURT: Excuse me. Let me stop you there. Are you saying in your 25 to 30 years of work you've never had a situation where a child is found not to be telling the truth?

VENIREPERSON: Right. Correct.

THE COURT: So, that's never happened in your 25 or 30 years?

VENIREPERSON: No. I'm saying that—that, yes, what you said is true.

DEFENSE COUNSEL: Your Honor, at this time I'm going to move for a mistrial. This witness has polluted the jury panel.

THE COURT: Excuse me, sir. Approach the bench, please.

[At the bench, on the record.]

THE COURT: Yes?

DEFENSE COUNSEL: I move for a mistrial because this witness has been allowed to state in her 25 years, 25 years of work—

THE COURT: Mr. Smith [defense counsel], will you keep your voice down? That's why I asked you to approach the bench.

DEFENSE COUNSEL: That's the point of the motion. The entire jury panel—

THE COURT: I'm asking you to keep you voice down, sir.

DEFENSE COUNSEL: Yes, Your Honor. I was looking to see if the jury—if the court reporter can hear me. I'm moving for a mistrial because this witness has been allowed to

testify that in her 25 years I worked with children, whenever a child makes an accusation, that that is generally the truth. That witness should have been brought up here, allowed to say that in front of you without polluting the jury panel.

THE COURT: And that's denied.

\*    \*    \*    \*    \*    \*

[In the jury's presence.]

THE COURT: Ma'am, Ms. Valdez, are you saying that in your 25 to 30 years you have had occasion where a child was found not to be telling the truth; is that correct?

VENIREPERSON: Yes, that's what I said.

THE COURT: And so, my question to you then is are you saying that should the State's evidence not convince you beyond a reasonable doubt, that because of your experience in this area you would go ahead and find the person guilty anyway?

VENIREPERSON: No. That's not what I'm saying. And I don't know how to express myself.

THE COURT: Okay. I'll tell you what. I'm going to let you think about it. Excuse me. I'll let you think about it and we will come back to it.

The court later granted the appellant's challenge for cause against Ms. Valdez.

The court of appeals reversed, holding, "An instruction to disregard could not have cured the prejudice resulting from: (1) the impact of the venirewoman's improper opinion statement, combined with the emphasis given to it by the trial court's double-repetition of the statement; and (2) the fact that the prejudicial opinion addressed precisely the crucial issue of the

child complainant's credibility in an essentially two-witness case."[1]

We previously have explained the purpose of requiring a complaint to the trial court in order to preserve error for appellate review. "The generally acknowledged policies of requiring specific objections are two-fold. First, a specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it. Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony."[2] "Stated more broadly, objections promote the prevention and correction of errors. When valid objections are timely made and sustained, the parties may have a lawful trial. They and the judicial system are not burdened by appeal and retrial. When a party is excused from the requirement of objecting, the results are the opposite."[3]

A defendant's complaint may take three forms: (1) a timely, specific objection, (2) a request for an instruction to disregard, and (3) a motion for a mistrial. Each of these methods furthers the policies of preventing and correcting errors and conserving judicial resources, but in different ways and to varying degrees. An objection serves as a preemptive measure. Because it informs the judge and opposing counsel of the potential for error, an objection conserves judicial resources by prompting the prevention of foreseeable, harmful events.

■ The other two methods of complaint are corrective measures. An instruction to disregard attempts to cure any harm or prejudice resulting from events that have already occurred. Where the prejudice is curable, an instruction eliminates the need for a mistrial, thereby conserving the resources associated with beginning the trial process anew. Like an instruction to disregard, a mistrial serves a corrective function. However, the class of events that require a mistrial is smaller than that for which a sustained objection or an instruction to disregard will suffice to prevent or correct the harm. A grant of a motion for mistrial should be reserved for those cases in which an objection could not have prevented, and an instruction to disregard could not cure, the prejudice stemming from an event at trial—i.e., where an instruction would not leave the jury in an acceptable state to continue the trial. Therefore, a mistrial conserves the resources that would be expended in completing the trial as well as those required for an appeal should a conviction occur.

■ Because the objection, the request for an instruction to the jury, and the motion for mistrial seek judicial remedies of decreasing desirability for events of decreasing frequency, the traditional and preferred procedure for a party to voice its complaint has been to seek them in sequence—that is, (1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient. However, this sequence is not essential to preserve complaints for appellate review.[4] The essential requirement is a timely, specific request that the trial court refuses.[5]

1. *Young v. State,* 73 S.W.3d 482, 485 (Tex. App.-Houston [1st Dist.] 2002) (*en banc* ).

2. *Zillender v. State,* 557 S.W.2d 515, 517 (Tex. Cr.App.1977).

3. *Saldano v. State,* 70 S.W.3d 873, 887 (Tex. Cr.App.2002).

4. *See Fuller v. State,* 827 S.W.2d 919, 926 (Tex.Cr.App.1992).

5. "As a prerequisite to presenting a complaint for appellate review, the record must show that:

■ In most instances, an objection will prevent the occurrence of the prejudicial event, and the failure to make a timely, specific objection prevents appellate review. If an objectionable event occurs before a party could reasonably have foreseen it, the omission of objection will not prevent appellate review. The reasons are clear. It is not possible to make a timely objection to an unforeseeable occurrence, and an objection after an event occurs cannot fulfill the purpose of the objection, which is to prevent the occurrence of the event.

■ Similarly, the request for an instruction that the jury disregard an objectionable occurrence is essential only when the such an instruction could have had the desired effect, which is to enable the continuation of the trial by a impartial jury. The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an instruction. But if an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal. Faced with incurable harm, a defendant is entitled to a mistrial and if denied one, will prevail on appeal.

■ Accordingly, when a party's first action is to move for mistrial, as this appellant's was, the scope of appellate review is limited to the question whether the trial court erred in not taking the most serious action of ending the trial; in other words, an event that could have been prevented by timely objection or cured by instruction to the jury will not lead an appellate court to reverse a judgment on an appeal by the party who did not request these lesser remedies in the trial court. Limited as this scope of appellate review may be, such an appellate review is available to such a party.

We recognize the potential for abuse of a rule allowing a motion for mistrial without a preceding objection or request for instruction to disregard. If a party delays motion for mistrial, and by failing to object allows for the introduction of further objectionable testimony or comments and greater accumulation of harm, the party could no more rely on the untimely motion for mistrial than on an untimely objection. This appellant's motion for mistrial was not so delayed.

■ In this case, the appellant moved for mistrial once it became apparent that the judge was beginning to focus her questions on the venire member's comments regarding her 25 to 30 years of experience and the truthfulness of children. The appellant complained, among other things, about the comments made during the portion of voir dire that is presented above. Specifically, the appellant argued that the trial court erred in denying his motion for mistrial because Ms. Valdez's statements were prejudicial and were repeated and emphasized by the trial court in the pres-

(1) the complaint was made to the trial court by a timely request, objection, or motion that:
(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and
(2) the trial court:
(A) ruled on the request, objection, or motion, either expressly or implicitly; or
(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." Tex.R.App. P. 33.1(a).

ence of the jury panel.[6] The court of appeals agreed:

> Mistrial is the appropriate remedy when, as here, the objectionable events "are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." Although appellant's counsel did not pursue the familiar procedure of objection and request for an instruction to disregard before moving for a mistrial, his action forced the trial court to choose between letting the remark stand and declaring a mistrial; moreover, appellant's motion for mistrial preserved error. The quoted colloquy constituted a record that fully demonstrated harm. An instruction to disregard could not have cured the prejudice resulting from: (1) the impact of the venirewoman's improper opinion statement, combined with the emphasis given to it by the trial court's double-repetition of the statement; and (2) the fact that the prejudicial opinion addressed precisely the crucial issue of the child complainant's credibility in an essentially two-witness case.[7]

For the reasons discussed above, the court of appeals was correct to hold that the appellant preserved error for appeal.

■ We do not agree with the court's conclusion regarding the curability of the harm flowing from the prospective juror's comments. Assuming that the comments were indeed prejudicial, it is not clear from the record that a timely objection, immediately following the Ms. Valdez' first statement, would not have prevented the lengthy exchange between the Ms. Valdez and the judge and the "emphasis" on that initial statement with which the court of appeals was so concerned.

Furthermore, we believe that an instruction to disregard would have cured the prejudice, if any, for several reasons. First, even without an instruction from the court, it seems probable that other members of the venire, drawing on their own experiences regarding the truth-telling tendencies of young children, would question the veracity of Ms. Valdez' statements that she had never known a child with whom she worked to lie. An instruction to disregard may have served only to underscore any incredulity that the other prospective jurors already felt. Second, Ms. Valdez ultimately was challenged for cause by the appellant and was dismissed. Her departure at such an early stage in the trial may have mitigated any prejudice caused by her remarks, and an instruction to disregard, combined with her absence from the remainder of the trial, may have been easier for the remaining prospective and ultimately selected jurors to follow. Also, as the State points out, Ms. Valdez was not a witness in the trial and had not been presented as an expert. The record does not reflect any discussion of her educational background, the type of program in which she worked, or the specific type of work that she performed. Given in the minimal information that the other prospective jurors had about Ms. Valdez, it is reasonable to believe that an instruction to disregard her remarks would have cured any lingering prejudice.

■ While we accept this much of the State's argument, we must address another aspect, which exposes an ambiguous portion of the record. In support of its argument regarding curability, the State refers to the apparent "self-contradictory"

---

6. *See Young,* 73 S.W.3d, at 483.

7. *Id.* at 485 (citations omitted).

remarks of Ms. Valdez. Specifically, the State points to the following exchange:

THE COURT: Ma'am, Ms. Valdez, are you saying that in your 25 to 30 years you *have* had occasion where a child was found *not* to be telling the truth; is that correct? (emphasis added)

VENIREPERSON: Yes, that's what I said.

We recognize the patent contradiction between Ms. Valdez' answer to this question and the ones asked of her only minutes before. We attribute this contradiction to one of three things: (1) The record is accurate and Ms. Valdez contradicted her previous statement; (2) the record is accurate, but the court *intended* to say "you have *not* had occasion," Ms. Valdez understood the court's intended meaning, and she answered consistently with her prior comments; or (3) the court actually asked Ms. Valdez if she had "*not* had occasion" and Ms. Valdez answered accordingly, but the court reporter mistakenly omitted the critical word from the record of the court's question. We believe it reasonable to conclude that either the second or the third scenario is what actually occurred. Ms. Valdez' response, "Yes, that is what I *said*," indicates that the court's question was a reiteration of her previous responses—that in 25 to 30 years she had not known a child to lie. Therefore, the State's argument that the apparently "self-contradictory" comments tend to make the harm curable does not factor into our analysis.

Because an instruction to disregard Ms. Valdez' comments would have cured any resulting harm, the trial court did not err in denying the appellant's motion for mistrial. The appellant chose not to object to the comment or to request an instruction. Instead, he chose to preserve error by immediately moving for a mistrial to which he was not entitled, foreclosing the opportunity to cure any prejudice that may have contributed to his conviction.

The court of appeals did not err in holding that, despite his failure to object and to request an instruction to disregard before moving for a mistrial, the appellant preserved error for appeal. However, the court was incorrect in its conclusion that an instruction to disregard would not have cured the prejudice caused by the prospective juror's opinion statements and that, therefore, the trial court erred in denying the appellant's motion for mistrial.

Because we hold that the trial court did not err, we do not reach the third ground for review, which was whether the court of appeals conducted a proper harm analysis. The judgment of the court of appeals is reversed, and the cause is remanded for consideration of the appellant's remaining points of error.

MEYERS, J., filed a dissenting opinion, in which PRICE and JOHNSON, JJ., joined.

JOHNSON, J., filed a dissenting opinion, in which MYERS and PRICE, JJ., joined.

MEYERS, J., dissenting in which PRICE and JOHNSON, JJ., joined.

I agree with the majority that the Court of Appeals was correct in determining that appellant's point of error was preserved for appeal. I disagree that the harm could have been cured by an instruction to disregard and feel that the Court of Appeals correctly determined that the jury was tainted by the exchange between the judge and venireperson Valdez. The majority says that the appellant procedurally defaulted his remedy for failure to ask the judge for an instruction to disregard the conversation that she had with the venireperson. I respectfully disagree and dis-

sent to this conclusion for the following reasons:

First, the error here was created by the trial judge and not by the state. Asking the judge to give an instruction telling the jury to disregard her actions [1] would have been fruitless and more antagonistic than helpful in seeking a new venire panel. The judge's activity is a different component in this equation and a request to disregard is simply not necessary. *See Blue v. State*, 41 S.W.3d 129, 132 (Tex.Crim.App.2000)(plurality opinion). *See also* Tex.R. Evid. 605 ("The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point.")

Second, this is really not a mistrial situation. While a request such as this, when made during voir dire is traditionally called a mistrial, it is really a request for the judge to dismiss the venire and bring in a new one. Mistrials generate other considerations such as double jeopardy, manifest necessity, delay of trial, inconvenience to witnesses and expense of retrial, etc. that are not issues in this situation. Therefore, a request for an instruction to disregard is not necessary since this is not a true mistrial situation. Since I do not feel that this step is required, I do not think that the appellant should be penalized for not requesting it.

Third, while the majority concludes that an instruction to disregard would have cured the error herein, it is still a fact that one was not given and therefore this venire panel, and later the jury, was still influenced by this discourse between the judge and the former venireperson. Because this is judge caused error and the judge should have known the possible ramifications, the appellant should not lose by

default for failing to request an instruction to disregard. Lastly, I disagree with the majority's conclusion that an instruction to disregard would have been sufficient to cure the harm caused by this error.

The majority claims that an instruction by the judge to disregard her statements would have cured the prejudice because:

it seems probable that other members of the venire, drawing on their own experiences regarding the truth-telling tendencies of young children, would question the veracity of Ms. Valdez' statements that she had never known a child with whom she worked to lie. An instruction to disregard may have served only to underscore any incredulity that the other prospective jurors already felt. Second, Ms. Valdez ultimately was challenged for cause by the appellant and was dismissed. Her departure at such an early stage in the trial may have mitigated any prejudice caused by her remarks, and an instruction to disregard, combined with her absence from the remainder of the trial, may have been easier for the remaining prospective and ultimately selected jurors to follow. Also, as the State points out, Ms. Valdez was not a witness in the trial and had not been presented as an expert. The record does not reflect any discussion of her educational background, the type of program in which she worked, or the specific type of work that she performed.

Op. at 71. Each of these arguments makes assumptions about the thought processes of the veniremembers that we have no way of knowing. First, we don't know what experiences with the truth-telling tendencies of young children the members

---

1. It seems that everyone, including the state and the dissenting opinions at the Court of Appeals feel that the judge committed error in

carrying on this conversation in front of the entire venire.

of the venire may have had, and we don't know that they felt incredulity toward Ms. Valdez' statements about children with whom she worked. Additionally, the fact that Ms. Valdez "was not a witness in the trial and had not been presented as an expert" does not mean that her statements, which were practically testimony, did not influence the rest of the venire. If we're going to speculate about the thought processes and experiences of the veniremembers then let's go ahead and assume that the panel of prospective jurors probably don't know Article VII of the Texas Rules of Evidence and thus did not realize that the fact that there was no discussion of her educational background and qualifications indicates that she is not an expert. In fact, her fellow veniremembers may have given her statements even more consideration because she was a neutral party rather than a hired expert called by one side. We have no way of knowing this and should not make assumptions about what the individual veniremembers may have thought about the dialog between the judge and Ms. Valdez. Instead, we should base our decision regarding the harm and prejudice on the characteristics of the dialog itself, since they, unlike the thoughts of the jurors, can be accurately ascertained. The dialog was extensive; Ms. Valdez was adamant in her belief that children never lie about these things; and the entire venire was present and was in a setting where each venireperson would be paying close attention to the conversation between the judge and a fellow veniremember. Additionally, the fact that Ms. Valdez was challenged for cause and stricken indicates that the judge acquiesced that her opinions and conclusions, which had been shared with the entire venire, were biased and would affect her ability to render an impartial verdict. Thus, this examination of Ms. Valdez by the judge was lengthy, her opinion was repeatedly emphasized, and the panel was focused on the discussion. In many ways, the dialog between Ms. Valdez and the judge was similar to testimony.

Due to the nature of the discourse, even if an instruction to disregard had been given, the entire jury panel would still be influenced by the statements. Additionally, because the judge's interaction with Ms. Valdez is part of what made the dialog so harmful, an instruction by the judge to the panel to disregard would be tantamount to the judge saying "disregard my conversation with Ms. Valdez" which would undermine the benefit of the instruction and the venire may then view all of the judge's comments incredulously or with uncertainty.

As mentioned above, because jeopardy had not yet attached, there were measures that could have been taken by the trial judge to ensure a fair trial that, unlike an instruction to disregard, would have been beneficial but less drastic than declaring a mistrial, such as dismissing the venire and requesting a new one.[2] Instead, no measures at all were taken and this failure to cure the harm caused by the comments of Ms. Valdez tainted the jury that was chosen from this venire and may have affected the outcome of the trial. For this reason, I feel that appellant was entitled to relief and would affirm the holding of the Court of Appeals. I respectfully dissent.

2. Article 34.02 of the Texas Code of Criminal Procedure allows the court to order additional veniremen when the court deems that the veniremen theretofore drawn will be insufficient for the trial of the case. While this statute has been applied more for when there are not enough veniremembers to construct a jury due to challenges, it could also apply to cases such as the one before us.

JOHNSON, J., filed a dissenting opinion in which MEYERS and PRICE, JJ. joined.

During voir dire, the trial court engaged Mrs. Valdez, a potential juror, in an exchange about her experiences working with children who had been sexually assaulted. *Young v. State*, No. 1410–01 (Tex.Crim.App., delivered ——, op. At 67–68). The essence of the exchange, which occurred in the presence of the entire venire, was that in her 25 to 30 years of working with children who had been assaulted, she had encountered no child who had been found to be lying about the assault. Anyone who has ever had a child, or been one, knows that children lie, but it was not Ms. Valdez' testimony that children never lie. Her testimony was that children never lie about being sexually assaulted, an entirely different proposition. Such an opinion from a person with her stated experience carries significant weight because dealing with children who have been sexually assaulted is not within the experience of most people. She, in effect, testified to the jury as no expert would be permitted to do.

I would find that her remarks poisoned the panel and were harmful and that the harm was exacerbated by the continued exchange between the trial court and Ms. Valdez after appellant's counsel moved for mistrial. Because of that continued exchange after the request for mistrial, I would find that the harm could not be cured by an instruction to disregard.

I respectfully dissent.