IN THE COURT OF
CRIMINAL APPEALS

                                   OF
TEXAS

 

                                                                              

                                                               NO.
PD-0397-05



 

 

                                         GARY MICHAEL BARNETT, Appellant

 

                                                                             v.

 

                                                        THE
STATE OF TEXAS

 



                         ON
STATE=S
PETITION FOR DISCRETIONARY REVIEW

                                     FROM
THE SECOND COURT OF APPEALS

                                                           TARRANT  COUNTY



 

Cochran,
J., delivered the opinion of the Court in which Meyers, Price, Womack, Johnson, Keasler, Hervey, and Holcomb, JJ., joined.  Keller, P.J., concurred in the
result.

 

                                                                  O
P I N I O N 

 








In this case we must decide whether a
defendant forfeits his complaint on appeal that the trial court gave the jury a
coercive oral AAllen charge@[1] if he failed to object to the court=s earlier improper polling of the
jury.[2]  We hold that
the failure to object to unauthorized polling of the jury does not forfeit the
separate issue of the propriety of the trial judge=s later oral statement to the two
hold-out jurors that Awe do have a problem with both of you@ and his inquiry into whether those
jurors could change their votes.  Thus, we affirm the court of appeals which
held that the trial court abused its discretion by denying appellant=s request for a mistrial after making
comments Athat directly influenced the jury=s verdict.@[3]

                                                                             I.

Appellant was charged with aggravated
sexual assault and indecency with a child.  After the close of evidence, the
trial court instructed the jury on two counts of aggravated sexual assault and
two counts of indecency with a child.  The jury originally returned verdicts of
Anot guilty@ on the two counts of aggravated
sexual assault and verdicts of Aguilty@ on the two indecency counts.  Appellant asked for the jury
to be polled.








During the polling procedure, it soon
became apparent that the jury was not unanimous on the two Anot guilty@ verdicts:  Athe jurors were split eleven-to-one
in favor of not guilty on count one and eleven-to-one in favor of guilty on
count two.@[4]  Both the trial judge and the
defense attorney were flummoxed by this development which neither had ever
experienced.  The prosecutor properly suggested, AContinue to deliberate is all I know.@  Appellant=s attorney requested a short recess Ato form my objection or make some
request to the Court[.]@  He did not object before or after that short recess. 
Instead, the trial judge again polled the jury in open court, asking every
juror what his verdict was on each of the four counts.  Appellant=s attorney did not object.  The
jurors were still split eleven-to-one for Anot guilty@ on count one and eleven-to-one for Aguilty@ on count two.  Appellant=s attorney did not object. 
Immediately thereafter, the trial judge said

All right.  Got everybody.  

Now, two of you are not unanimous with everybody
else.  And I=m going to ask the two of you, that being Mr. Jones
andB

Mr. Etheridge, your verdict was not guilty on Count
One and not guilty on Count Two.  Mr. Jones, your verdict was guilty on Count
One, and guilty on Count Two.  The remaining jurors were not guilty on count
One, but guilty on count Two, Three and Four.

So we don=t
have a problem with that.  But we do have a problem with both of you, as
far as Counts One and Two from Mr. Jones, and Count One and TwoBI=m sorryBCount One for Mr. Jones and Counts One and Two for Mr.
Etheridge.

Mr. Jones, if I sent you back in there to deliberate,
do you think thatBand y=all have been
deliberating pretty much all afternoon and all morningBdo you think that you would be able to change your vote, or do you think that you would still maintain your
vote as it is? [emphasis added]

 

Juror Jones:   I thinkBcould be possible, yes.

 

Okay.  Mr. Etheridge, what about youB 

 

Juror Etheridge:        It=s possible.

 

Bif I sent you back there, do you think you can
continue to deliberate, or do you feel that you just couldn=tBthere=s nothing that anybody can say to make you change your
mind? [emphasis added]

 

Juror Etheridge:        It=s possible.

 








All right, all right.  Let me tell you this, tooBand I=m going to send
you back to deliberate.  We=re going to
deliberate for as long as we can.  So let=s
go in the back, and if you have not reached a verdict by 5:00 o=clock, I=m
going to call you back out because I need to make some additional arrangements
if we haven=t gotten anyBa
verdict by that time.  Okay?

All right.  Go back in the back and deliberate.  You=re only deliberating on TwoBOne and Two basically.

 

Once
the jury departed, the trial judge said

 

Here=s how I see
it.  We can do one or two things.  I=m
going to let them deliberate, but I can also, under the law, in Count One and
Count Two declare a mistrial if they have not reached a unanimous verdict. 
Everybody else is in agreement on Counts Three and Four.  We don=t have any problem with this, so . . . 

 

At
that point, appellant=s attorney interrupted:

 

 We are nowBwhat
I=m getting ready to say might not have beenByou and I had some conversation how this has never
happened in our lives, and quite frankly, it caught me by surprise.  And I
think if I had not asked for a poll, we wouldn=t be having this conversation right now.

I would ask the CourtBand I=ve conferenced with my client.  I would ask the Court
to enter judgment on Counts Three and Four as theBin light of the jury=s verdict, and
I would ask the Court to entertainBto
declare a mistrial on Counts One and Two.  The reasons, therefore, are kind of
twofold.  I mean obviously because the jury said they can=t agree.  The statuteBand I certainly don=t find any
fault with the Court for doing what you did.  I may have done exactly the same
thing if I had been in your shoes.

Article 37.05 says that the Court canBwhen you=re
polling a jury, you can ask them if it=s
their verdict, and if they answer in the affirmative, then you go on; and if it=s not, you send them back in the jury room.  And the
Court=s done that, and I certainly don=t have any complaint about the Court even going over
it with them in detail like you did here a second time.

But what has concerned me, just kind of by the way it=s come out, is now we have two jurors who basically
have opposite feelings in the way they voted on these two counts. . . .

It appears to me that those two jurors may compromise
their verdict in order to achieve a liken [sic] result, and that concerns me. 
I=m not sure it will be unanimous.








And for those reasons, I would ask the Court to
declare a mistrial to Counts One and Two.  I have no objection [to] entering
judgment on Count Three and Four.

 

The trial judge then asked for the
State=s position which was that the statute
requires the jury to continue deliberating and that is what they were doing. 
The trial judge said that he would permit the jurors to continue their
deliberations for the time being, and, if they could not reach a verdict that
evening, he would reconsider granting a mistrial.

Twenty minutes after being sent back
to deliberate, two separate notes were sent out announcing that Mr. Jones and
Mr. Etheridge had each changed his verdict.  Mr. Jones changed his verdict from
Aguilty@ to Anot guilty@ on Count One, and Mr. Etheridge
changed his verdict from Anot guilty@ on Count Two to Aguilty.@  The trial judge announced, ASo now that conforms with everybody.@

Appellant=s attorney reurged his motion for
mistrial and stated that Ait=s a compromised verdict.  It=s 4:30 in the afternoon.  These
people would like to go home.  And I see that as a compromised verdict as
opposed to a full, independent verdict on their parts.@  The trial judge denied that motion A[b]ecause they=re not going home.  We=re going to continue on@ with the punishment phase.  The jury
sentenced appellant to twenty years= imprisonment on count two and ten
years= probation on counts three and four.








On appeal, appellant complained that
the trial court Aerroneously conversed with the jurors about their propensity
to change their verdict@ after the polling showed a nonunanimous verdict on counts
one and two.  The court of appeals first addressed the issue of preservation of
error.  After a lengthy analysis, it concluded that 

Here, the trial court questioned the two hold-out
jurors about changing their votes and sent the jury back to the jury room to
deliberate.  Appellant then requested a mistrial.  Allowing appellant to make
his request when he did does not run afoul of the purpose for requiring a
timely objection.  The trial court was in no better position to grant a
mistrial immediately after the improper questioning than it was immediately
after the jury was sent back to deliberate, when appellant actually made his
request. . . . Further, unlike an evidentiary objection that is best made
before an answer is given, it is the asking of the question itself that creates
the error when polling a jury.  Therefore, we hold that appellant=s request for a mistrial was sufficiently timely to
preserve error.[5]

 

The court of appeals then addressed 
whether appellant=s Arequests for a mistrial were sufficient to give the trial
court notice as to the nature of his complaint,@ and found that they were.  On the
merits of the issue, the court of appeals stated that Athe trial court=s actions in the present case had the
purpose and effect of encouraging a verdict.@[6]  Based upon its review of the court=s actions A>in [their] context and under all
circumstances,=@ it concluded that Ajury coercion is apparent from the
trial court=s final conversation with the two hold-out jurors.@[7]  It sustained appellant=s point of error, reversed the
judgment on count two and remanded that portion of the case for a new trial.[8]








                                                                II.

The State asked this Court for review
and explicitly stated that A[t]his petition is limited to the issue of preservation of
error relating to the poll of the jury in this case.@[9]  It argues that, by failing to
object to the trial court=s earlier improper procedure and Aby acquiescing in the repeated
improper polling of the jury, Appellant invited the trial court to disregard
the law.@[10]  

In essence, the State=s position is that appellant
forfeited his complaint concerning the purportedly coercive statements to the
two hold-out jurors because he did not object to the improper polling
procedure, which led to the jurors= disclosure of their specific
verdicts, which led to the trial court=s sua sponte statements.  That
is, once appellant let the trial judge start down the primrose path, he could
not complain when the judge ran into a bramble thicket at the end of the lane. 
Having invited the initial stroll, appellant was estopped from complaining
about any hidden demons that might lurk in the bushes along the way.

The State characterizes appellant=s appellate complaint as Ajury poll error@ under article 37.05.[11] 
Its thesis is that 








The court of appeals chose to review Appellant=s complaint as only directed at the last comment of the
judge.  Thus, the court of appeals ignored the two erroneous jury polls and
analyzed the court=s comment out of context.  The State submits isolating
this statement out of context is contrary to the usual review of a record to
determine whether error occurred.[12]

 

It is undoubtedly true that, had the
trial court followed the trial prosecutor=s initial advice to retire the jury
to deliberate further as soon as it was discovered that the jurors were not
unanimous, the purportedly coercive AAllen charge@[13] would never have been given.  We
agree with the State that appellant forfeited any error in the jury polling
process by failing to object when the trial court went beyond the scope of
article 37.05 and asked how each juror votedBguilty or not guilty.  But appellant
did not complain about the jury polling procedure.  His point of error on
appeal was:








The trial court erroneously conversed with the jurors
about their propensity to change their verdict, during polling at the guilt
innocence phase of the trial.[14]

 

The complaint was improperly Aconversing@ with two jurors about their
willingness to change their verdict, and that conversation happened to occur
during the polling of the jury.  Thus, appellant did not forfeit the right to
complain about the content of the trial court=s later statements simply because he
asked for the jury to be polled or because he failed to object once the trial
court went beyond the proper scope of jury polling.  

Our rules require, as a Aprerequisite to presenting a
complaint for appellate review,@ that the record show that Athe complaint was made to the trial
court by a timely request, objection, or motion[.]@[15]  Appellant=s Acomplaint@ on appeal is that the trial court
erroneously inquired into whether the two hold-out jurors could change their
verdicts.  Thus, appellant was required to make a timely objection, request, or
motion once that inquiry was made.








The court of appeals concluded that,
once the words were spoken, appellant made a timely motion for mistrial.[16] 
And, as the court of appeals correctly held, if an objection and instruction to
disregard would not have been sufficient to cure the error,  then appellant was
not required to undertake those steps first.[17] 
Here, appellant could not reasonably have foreseen that the trial court would
tell the two hold-out jurors that Awe do have a problem with both of you@ and ask them if they would be able
to change their vote.  Thus, appellant was excused from objecting to the trial
court=s statement and requesting an
instruction to disregard because that could not eliminate the harm that had
already been done by the very uttering of the words.[18]








In sum, while we agree with the State
that appellant failed to preserve any appellate issue concerning the trial
court=s polling procedure, appellant=s motion for mistrial was
sufficiently timely to preserve the complaint that he did make on appeal. 
Therefore, we affirm the judgment of the court of appeals.

Delivered: March 8, 2006

Publish

 

 

 

 

 

 

 

 

 









[1]
Allen v. United States, 164 U.S. 492, 501 (1896).





[2]
The State=s two
grounds for review are

1)                 
Is an objection premised on article 37.05 of the Code of Criminal
Procedure timely if a litigant does not object at the earliest time?

2)                 
Did the appellant invite error in the polling of the jury by failing to
timely object when the trial court twice improperly polled the jury by asking
numerous jurors how they voted?





[3]
Barnett v. State, 161 S.W.3d 128, 135 (Tex. App. B Fort Worth 2005) (emphasis in original).





[4]
Id. at 131.





[5]
Id. at 133.





[6]
Id. 





[7]
Id. at 133-34 (quoting Howard v. State, 941 S.W.2d 102, 123 (Tex.
Crim. App. 1996)).





[8]
Id. at 136.  One justice concurred in the result, stating that appellant
had failed to object to the improper AAllen
charge,@ which is a
subspecies of jury charge error.  She argued that appellant=s request for a mistrial
after the offending comments Adid
not clearly inform the trial court that he was complaining of the erroneous
jury instruction.@  Id.
at 136 (Dauphinot, J., concurring).  She concluded, AIn the context of the entire case against
Appellant, the trial court=s
error in singling out the hold-out jurors and asking if they could change their
votes caused appellant egregious harm[,]@
because the jury assessed twenty years=
imprisonment on the problematic count two verdict and only ten years= community supervision on
counts three and four.  Id. at 137.





[9]
State=s Brief on the
Merits at 4.





[10]
Id. at 6.





[11]
Tex. Code Crim. Proc. art.
37.05.  That article reads

The State or the defendant shall have the right to have the
jury polled, which is done by calling separately the name of each juror and
asking him if the verdict is his.  If all, when asked, answer in the
affirmative, the verdict shall be entered upon the minutes; but if any juror
answer in the negative, the jury shall retire again to consider its verdict.





[12]
State=s Brief on the
Merits at 7.





[13]
An Allen charge is a supplemental charge sometimes given to a jury that
declares itself deadlocked.  It reminds the jury that if it is unable to reach
a verdict, a mistrial will result, the case will still be pending, and there is
no guarantee that a second jury would find the issue any easier to resolve.  Allen,
164 U.S. at 501.  While such a charge is permissible in both the federal system
and Texas courts, trial courts must be careful to word it and administer it in
a non-coercive manner.  Lowenfield v. Phelps, 484 U.S. 231, 237 (1988)
(noting that a supplemental Allen charge must be considered A>in its context and under all the
circumstances=@ to determine whether it
improperly coerced the jury) (citation omitted); Howard v. State, 941
S.W.2d 102, 123-24 (Tex. Crim. App. 1996) (although trial judge was aware of
the numerical division when he gave supplemental Allen charge, he Adid not directly address
the minority jurors and did not shade the instruction with coercive nuance,@ thus, in context, charge
was noncoercive).





[14]
Appellant=s Brief on
Appeal to the Court of Appeals at 3.





[15]
Tex. R. App. P. 33.1(a)(1); see,
e.g., Lagrone v. State, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997) (AAn objection should be made
as soon as the ground for objection becomes apparent. . . . If a defendant
fails to object until after an objectionable question has been asked and
answered, and he can show no legitimate reason to justify the delay, his
objection is untimely and error is waived@).





[16]
Barnett, 161 S.W.3d at 133.  Appellant=s
motion for mistrial was hardly a model of legal clarity.  Nonetheless, the
court of appeals concluded that it was sufficient to put the trial judge on
notice of his complaint that, Ajust
kind of by the way it=s
come out,@ the two
hold-out jurors were likely to compromise their original verdicts.  





[17]
161 S.W.3d at 134-35 (citing Young in noting that a defendant who
requests a mistrial without first requesting a curative instruction forfeits
appellate review of that class of events that could have been cured; holding
that an instruction to disregard would not have cured the harm caused by the
trial court=s
statements to the hold-out jurors); see Young v. State, 137 S.W.3d 65,
69 (Tex. Crim. App. 2004).  As we noted in Young,

If an objectionable event occurs before
a party could reasonably have foreseen it, the omission of objection will not
prevent appellate review.  The reasons are clear. It is not possible to make a
timely objection to an unforeseeable occurrence, and an objection after an
event occurs cannot fulfill the purpose of the objection, which is to prevent
the occurrence of the event.

137 S.W.3d at 70.





[18]
As a part of its argument that appellant was required to object Aat the first improper
question,@ the State
notes that Aif
Appellant had objected before the jury returned to deliberate, the trial
court could have further instructed the panel so as to remove any alleged
coercive effect from the court=s
unfortunate choice of words.@ 
State=s Brief on the
Merits at 13.  This single sentence, however, does not address the court of
appeals=s lengthy
analysis and numerous citations to both state and federal cases supporting its
conclusion that, taken in context, Aan
instruction to disregard would not have cured the harm@ caused by the trial court=s indirect communication
that it wanted the hold-out jurors to change their votes.@  161 S.W.3d at 135.