In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-122 CR


____________________



LLOYD FORREST LOWE, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 75th District Court


Liberty County, Texas


Trial Cause No. CR24975






MEMORANDUM OPINION


 In separate counts of a single indictment, Lloyd Forrest Lowe was charged with the
felony offenses of aggravated robbery and burglary of a habitation. See Tex. Pen. Code
Ann. §§ 29.03(a)(2), 30.02(a)(1) (Vernon 2003). Each count also listed prior felony
convictions alleged in sequential order raising Lowe's punishment exposure to that of an
habitual offender. See Tex. Pen. Code Ann. § 12.42 (d) (Vernon Supp. 2006). A jury found
Lowe guilty of both offenses and assessed punishment at confinement in the Texas
Department of Criminal Justice - Correctional Institutions Division for terms of seventy years
(aggravated robbery) and thirty-five years (burglary). Lowe presents two issues for our
consideration, viz:

 1. It was error for the State's Attorney to inject injurious and prejudicial
matters before the jury panel during the voir dire examination. 


 2. The trial court erred in receiving prejudicial testimony over appellant's
objection. 


 The first issue focuses on a portion of the voir dire examination by the State as it
attempted to qualify the venire on punishment vis-a-vis habitual offender status. The record
indicates that after having explained first-offender punishment ranges for the offenses in
question, the State proceeded to discuss the punishment ranges for repeat and habitual
offenders. To place Lowe's issue in the proper context, we reproduce the pertinent part of
the State's voir dire examination as it appears in the record: 

 [State]: So, if a person is a repeat felony offender, and if it's shown on
the trial of a second degree felony that the defendant has once before been
convicted of a felony, on conviction, he shall be punished as a first degree
felony. So if you've done a second degree crime and found guilty of it, and
it's shown that, once before, you've been finally convicted of another felony,
you jump from that second degree, which is two to twenty, up to a first degree,
which is five to 99 or life. And that would be the Robbery charge, Burglary
of a Habitation charge, if it's proven that there is a previous felony conviction,
they go to first degrees instead of second degrees. 

 Also, on the repeat felony offender classification, if it's shown on trial
of a first degree felony the defendant has once before been convicted of a
felony, on conviction, he shall be punished for imprisonment of any term not
more than 99 years or less than 15 years. So you've jumped from a first degree
felony to a [sic] enhanced first degree felony. So instead of five to 99, it's now
a minimum of 15 years, maximum of 99 years. And you can tack a fine on to
it too. So that would mean if the Aggravated Robbery were proven, and he
were found guilty on it, it jumps from a minimum five years in prison to a
minimum 15 years in prison. Everybody got that.

 We have a thing called the Felony Habitual Offender statute. And if
you're a habitual felony offender, and this is a long one: "If it is shown on the
trial of a felony the Defendant has previously been finally convicted of two
felony offenses, and that the second previous felony conviction is for an
offense that occurred subsequent to the first previous conviction having
become final, on conviction, he shall be punished by imprisonment for any
term of not more than 99 years or less than 25 years.[sic]

 Does everybody understand that? Let me explain it to you in real
simple terms. If you do a crime and you get finally convicted on it, and then
you do a second crime and you get finally convicted on it, and you do a third
crime and you get finally convicted - - not finally, you get convicted on it, this
is a felony, the case we've got right here is a felony - - then the minimum
sentence is 25 years in prison, no more than life. But there is no fine in this
case. And that doesn't matter if it's a third degree felony, a second degree
felony or a first degree felony. Any felony that you've had two previous
convictions on, they jump to a minimum 25 years. 

 Can everybody assess this punishment range when trying to do this? 
Depending on the grade of crime, between two years and 20 years, five years
and 99, 15 years and 99, or 25 years and 99, can everybody do this? If you do,
raise your hand. 

 

 Ms. [Venireperson No. 4].


 VENIREPERSON NO. 4: Uh-huh.


 [STATE]: Did you have your hand up?


 VENIREPERSON NO. 4: Yes.


 [STATE]: Could you wait to see where to plug it in on this formula
we've got here?


 VENIREPERSON NO. 4: (Shakes head up and down)


 [STATE]: And could you follow with whatever punishment range you
deem is right and assess a punishment in that range?


 VENIREPERSON NO. 4: Yes.


 [STATE]: Ms. [Venireperson No. 3].


 VENIREPERSON NO. 3: Yes.


 [STATE]: Could you do it?


 VENIREPERSON NO. 3: Could you ask the question again?


 [STATE]: Could you take the facts of this case and, depending on
which punishment range is applicable, could you fit a punishment on these
particular crimes in that range we've given you?


 VENIREPERSON NO. 3: Yes, sir.


 [STATE]: Is there anybody out here that couldn't do it? I take it by
your silence you could all follow the law on that.


 Lowe recognizes that the State may inform the jury panel during voir dire of the range
of punishment applicable should the State prove a prior conviction alleged for purposes of
enhancing punishment, citing to Frausto v. State, 642 S.W.2d 506, 509 (Tex. Crim. App.
1982). Lowe argues, however, that the method the State used, as set out above, to inform the
jury "was the functional equivalent of reading to the Jury Panel the enhancement paragraphs,
a violation within the meaning and scope of Art 36.01(1) V.A.C.C.P." The State responds
by pointing out that since Lowe failed to lodge an objection during the State's enhancement
presentation, he has forfeited appellate review of the issue. The record indicates that,
following the State's voir dire presentation, the trial court recessed the venire panel for lunch,
at which point Lowe moved for a mistrial arguing the State had essentially informed the jury
that Lowe had two prior felony convictions. The trial court denied the mistrial motion. 
Lowe did not request any curative instructions from the trial court with regard to this issue. 
 The timeliness of Lowe's complaint to the trial court is indeed problematic. As a
prerequisite to presenting a complaint for appellate review, the record must indicate that a
timely request, objection, or motion was made with sufficient specificity so as to apprise the
trial court of the complaint, unless the specific grounds were apparent from the context, and
the complaining party must receive a ruling on the request, objection, or motion. Tex. R.
App. P. 33.1(a)(1)(A). The request, objection, or motion should be made as soon as the
ground for it becomes apparent, because if a party fails to object until after an objectionable
question, statement, or event has taken place, and the party cannot show any legitimate
reason to justify the delay, the objection is untimely and any error is forfeited. Lagrone v.
State, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997); Dinkins v. State, 894 S.W.2d 330, 355
(Tex. Crim. App. 1995). The Court of Criminal Appeals has indicated "both Texas Rule of
Appellate Procedure 33.1 and Texas Rule of Evidence 103 are 'judge-protecting' rules of
error preservation." Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (quoting
Martinez v. State, 91 S.W.3d 331, 335 (Tex. Crim. App. 2002)). "We recognized that 'the
party complaining on appeal (whether it be the State or the defendant) about a trial court's
admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done
everything necessary to bring to the judge's attention the evidence rule or statute in question
and its precise and proper application to the evidence in question.'" Reyna, 168 S.W.3d at
177 (quoting Martinez, 91 S.W.3d at 335-36).

 A party's complaint may take three forms: (1) a timely, specific objection, (2) a
request for an instruction to disregard, and (3) a motion for mistrial. Young v. State, 137
S.W.3d 65, 69 (Tex. Crim. App. 2004). The Court in Young went on to discuss the purposes
these three forms of complaint serve in a judicial proceeding:

 Each of these methods furthers the policies of preventing and correcting errors
and conserving judicial resources, but in different ways and to varying degrees. 
An objection serves as a preemptive measure. Because it informs the judge
and opposing counsel of the potential for error, an objection conserves judicial
resources by prompting the prevention of foreseeable, harmful events.

 The other two methods of complaint are corrective measures. An
instruction to disregard attempts to cure any harm or prejudice resulting from
events that have already occurred. Where the prejudice is curable, an
instruction eliminates the need for a mistrial, thereby conserving the resources
associated with beginning the trial process anew. Like an instruction to
disregard, a mistrial serves a corrective function. However, the class of events
that require a mistrial is smaller than that for which a sustained objection or an
instruction to disregard will suffice to prevent or correct the harm. A grant of
a motion for mistrial should be reserved for those cases in which an objection
could not have prevented, and an instruction to disregard could not cure, the
prejudice stemming from an event at trial - - i.e., where an instruction would
not leave the jury in an acceptable state to continue the trial. Therefore, a
mistrial conserves the resources that would be expended in completing the trial
as well as those required for an appeal should a conviction occur.

 Because the objection, the request for an instruction to the jury, and the
motion for mistrial seek judicial remedies of decreasing desirability for events
of decreasing frequency, the traditional and preferred procedure for a party to
voice its complaint has been to seek them in sequence - - that is, (1) to object
when it is possible, (2) to request an instruction to disregard if the prejudicial
event has occurred, and (3) to move for a mistrial if a party thinks an
instruction to disregard was not sufficient. However, this sequence is not
essential to preserve complaints for appellate review. The essential
requirement is a timely, specific request that the trial court refuses.


Id. (footnotes omitted). 

 Two exceptions to the preferred procedure of sequential complaints for preserving
issues for appellate review are when an objectionable event occurs before a party could
reasonably have foreseen it, and when an otherwise objectionable event cannot be cured by
an instruction to disregard. Id. at 70. In the instant case, Lowe merely moved for a mistrial.
Therefore, the scope of review is limited to the question of whether the trial court erred "in
not taking the most serious action of ending the trial; in other words, an event that could have
been prevented by timely objection or cured by instruction to the jury will not lead an
appellate court to reverse a judgment on appeal by the party who did not request these lesser
remedies in the trial court." Id. However, to be entitled to appellate review of the denial of
a mistrial motion under these particular circumstances, the record must indicate that Lowe
did not delay in making the motion so as to permit the introduction of further objectionable
discussion and comments and greater harm. See id. 

 As reproduced above, the pertinent part of the State's range of punishment discussion
began by explaining repeat offender status. It is basically a recitation of the provisions found
in Tex. Pen. Code Ann. § 12.42(b), (c)(1) (Vernon Supp. 2006). At this point, Lowe must
have been aware of the direction the State's voir dire presentation would take. Indeed, Lowe
had a pretrial motion in limine on file requesting the trial court to instruct the State "not to
allude to, refer to, or in any way bring before the jury, whether as a panel, an individual
venire person, or a jury selected to try this case . . . [a]ny evidence or testimony of any nature
referring in any way to alleged prior bad acts and/or criminal offenses of any person, living
or dead unless it first determined [sic] by the Court, outside the presence of the Jury, that
such testimony or evidence is proper and admissible[.]" While the State's voir dire
presentation involved neither "testimony" nor "evidence," the motion in limine indicates
Lowe understood measures were necessary to prevent the jury panel from being informed of
his prior criminal history during the guilt/innocence phase of the trial. Thereafter, with
regard to the habitual offender discussion, the State appears to initially read from the
provisions of Tex. Pen. Code Ann. § 12.42(d) (Vernon Supp. 2006). The prosecutor's
further attempt to simplify the provision may or may not have met with success, but the
discussion is couched in hypothetical terms. He concluded by attempting to determine if the
venire had any bias against the repeat and habitual offender provisions he had just discussed. 
See Sadler v. State, 977 S.W.2d 140, 142-43 (Tex. Crim. App. 1998).

 Under the facts before us, Lowe has not shown any legitimate reason for waiting until
the conclusion of the State's voir dire presentation to lodge his complaint. See Lagrone, 942
S.W.2d at 618. As the State began its qualification of the venire on the full range of
punishment, Lowe had sufficient time to focus attention on the State's presentation so as to
be ready to lodge a timely objection if necessary. Furthermore, assuming without deciding
that some of the State's remarks were harmful to Lowe, we believe a timely objection to any
of the purportedly harmful remarks and an instruction to disregard would have cured any
harm. See Young, 137 S.W.3d at 71. The record indicates that voir dire was conducted on
March 20, 2006, and the guilt/innocence phase lasted a little over two days. The State
presented five witnesses in its case-in-chief. Lowe rested without presenting any witnesses
in his defense. Almost two full days elapsed from voir dire presentation to the jury's
deliberations on guilt/innocence. This significant passage of time lessens any harm to Lowe. 
See Young, 137 S.W.3d at 71 (Striking of patently prejudiced venireperson "at such an early
stage in the trial may have mitigated any prejudice caused by her remarks[.]"). Therefore, 
we find that Lowe did not preserve error by waiting to raise his complaint until after the State
had finished its voir dire, but even if Lowe had preserved error, we further find that, because
an instruction to disregard the State's range of punishment remarks would have cured any
resulting harm, the trial court did not err in denying Lowe's motion for mistrial. Issue one
is overruled. 

 Lowe's second issue complains of "prejudicial testimony" from a State's witness
"over appellant's objection." The record, however, belies Lowe's assertion that the
testimony was elicited over his objection. The State's first witness during guilt/innocence
was Christine Taylor, a dispatcher for the Liberty County Sheriff's Office. Deputy Taylor
was called by the State for the purpose of introducing into evidence a 911 audio tape
pertaining to the instant offenses. The tape was introduced into evidence and played for the
jury. Follow-up questions were asked of Deputy Taylor by both the State and by Lowe's trial
counsel on cross-examination. On re-direct examination, the following exchange took place: 

 [State:] Do you know [G.T. - the complainant in both offenses]?


 [Taylor:] No, I do not. 


 [State:] If you passed her on the street, would you know who she is?


 [Taylor:] No, sir. 


 [State:] Do you know Lloyd Forrest Lowe?


 [Taylor:] Yes, sir.


 [State:] How do you know Lloyd Forrest Lowe?


 [Taylor:] I've been a dispatcher for nine years and I've seen several mug shots
of him, so I know what he looks like.


 [State:] In relation to that, are you a licensed peace officer?


 [Taylor:] I am.


 [State]: Pass the witness.


 THE COURT: May this witness be excused? You may be excused.


 At this point, the trial court requested the attorneys for both parties to approach the
bench, with the following colloquy resulting: 

 THE COURT: Please tell your witnesses don't do what she just did.


 [State]: What?


 THE COURT: "Seen several mug shots of him." God almighty. 
Please tell them not to do it.


 [State]: . . . was heading the investigation for the burglary. I told him
not to get into that.


 [Trial Counsel]: Out of presence of the jury - - 


 THE COURT: No, no. 


 [Trial Counsel]: - - I'm going to move for mistrial.


 THE COURT: No. I'm not going to - - it's too late.


 We agree with the trial court. We are not faced with a situation where testimony or
comments were so surprising or not reasonably foreseeable that a timely, contemporaneous
objection was not required to preserve the alleged error for appellate review. As noted
above, the "traditional and preferred procedure for a party to voice its complaint" is first,
lodge a timely and specific objection; second, request a curative instruction if the harmful
event has occurred; and third, move for mistrial if the party believes the curative instruction
was not sufficient. Young, 137 S.W.3d at 69; see also Reyna, 168 S.W.3d at 177; Martinez,
91 S.W.3d at 335-36. In the instant case, because Lowe failed to object in a timely manner,
he forfeited appellate review of the issue. See Tex. R. App. P. 33.1(a); Cockrell v. State, 933
S.W.2d 73, 89 (Tex. Crim. App. 1996). Lowe's second issue is overruled. The judgment of
the trial court is affirmed.

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on July 26, 2006

Opinion Delivered November 1, 2006

Do not publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.