

# IN THE
# TENTH COURT OF APPEALS

No. 10-21-00193-CR

**NATHAN CARRINGTON COLEMAN,**

**Appellant**

v.

**THE STATE OF TEXAS,**

**Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2020-115-C2**

## MEMORANDUM OPINION

Nathan Coleman appeals from a conviction for continuous violence against the family, for which he was sentenced to 48 years in prison after pleading "True" to two enhancements. *See* TEX. PENAL CODE §25.11; 12.42(d). In his sole issue, Coleman complains that the trial court erred by denying his motion for mistrial due to the prosecutor's improper argument during the punishment phase of his trial. Because we

find that the trial court did not abuse its discretion, we affirm the judgment of the trial court.

The offense for which Coleman was convicted was based on two separate events several weeks apart where the jury found that Coleman had assaulted the victim, who was a former girlfriend and the mother of his child.

Although there has been no challenge to the sufficiency of the evidence, we set out the following for context.

The evidence, including photographs of the injuries, shows that as a result of the first assault, Appellant left the victim with bruising and redness to her face, redness around her ear, swollen lips, and discoloration of the skin in the chin area. The evidence also reflects bruising and severe redness around the victim's neck; those are indicators of strangulation. Additionally, the victim was bitten and hit several times in the head area. Appellant also shoved the victim to the ground, dragged her across the yard, grabbed her throat in a "choke slam," dragged her inside the house and into a closet where he continued to assault her.

The evidence shows that in the second assault, Appellant drove his elbow into the victim's chest and told her that he was going to crush her heart. He grabbed her head with one hand and her chin with another as if to snap the victim's neck. Appellant took the victim to a cemetery and told her that he was going to take her "to be with Dixie." Dixie was the victim's deceased friend.

The jury found Coleman guilty of continuous violence against the family.

During the punishment phase of the trial, evidence and photographs were admitted regarding some of Coleman's tattoos and their significance in prison. Coleman had a tattoo of a woodpecker on his arm, and the word "SOLO" on his stomach. The gang expert for the State testified that these tattoos signified that Coleman was potentially a member of the Peckerwoods, which the expert testified is not a prison gang but more like a collaborative group within the prison. The expert testified that the tattoos further indicated that Coleman was not affiliated with a gang like the Aryan Brotherhood Nation or Aryan Circle. The word "SOLO" indicated that Coleman did not intend to be part of a gang. The photograph of the "SOLO" tattoo admitted into evidence shows two lightning bolts in the middle of the tattoo.

Near the end of the State's closing argument in the punishment phase of the trial, the prosecutor stated the following:

> "Violence has no place in this community. Violence against women has no place in society at all. And I'll mention this, and I think it's—I think it's disgusting. The—the Peckerwoods symbol on his arm and the Solo in there, in that—we didn't talk very much about it, but there's lightning bolts that in there, right? He's not just going in there because he wants to come home, right? He chose to put a symbol of hatred on his body. Because what are those lightning bolts, Ladies and Gentlemen? Where do they stem from? The double lightning bolts comes from the Nazis, right? That is a white supremist [sic]—"

Coleman objected on the basis that the argument was outside the record and was highly prejudicial. Coleman also asked for an instruction to disregard. The trial court

sustained the objection and instructed the jury to "disregard the last statement of the prosecutor for all purposes." Coleman then asked for a mistrial and the trial court denied his request. Next, the prosecutor stated without objection: "I will ask you to take a look at the photos, if you choose to, and you can draw your own conclusions from what you see in those photos."

In his sole issue on appeal, Coleman complains that the trial court erred by denying his motion for mistrial because the instruction to disregard the prosecutor's argument was insufficient to eliminate the prejudicial effect of the improper statements.

Generally, an instruction to disregard improper jury argument cures any prejudicial effect. *Williams v. State*, 417 S.W.3d 162, 172 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). When the prejudicial effect is curable by the instruction, the instruction eliminates the need for a mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004).

We generally presume that the jury follows the trial court's instructions, including a motion to disregard. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). "The presumption is refutable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions." *Thrift*, 176 S.W.3d at 224.

There is an exception to this presumption, however. An instruction to disregard will not cure the error when the jury argument is manifestly improper or extreme. *Davis v. State*, 894 S.W.2d 471, 474-75 (Tex. App.—Fort Worth 1995, no pet.). If the prosecutor

argues outside the record and injects personal opinion, if the argument is clearly calculated to inflame the jury to such a degree that withdrawing the impression is impossible, the instruction to disregard will not cure the error. *Id*. at 475.

When a trial court sustains an objection and instructs the jury to disregard improper argument but denies a defendant's motion for mistrial, we must determine if the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). In determining whether a trial court abused its discretion by denying a motion for mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial effect); (2) the curative measures; and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed). *Id.*; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g).

Coleman argues that referring to white supremacy and the Nazis constituted such severe misconduct that the prejudicial effect could not be overcome by any instruction to disregard the statements. We agree that the reference to white supremacy and the Nazis was improper. There was no testimony by the gang expert that Coleman was related to any white supremacist groups or the Nazis. The only evidence before the jury was the photographs of the tattoos themselves, and Coleman did not object to their admission or the prosecutor's final comment after the denial of his motion for mistrial for the jury to look at the photographs and determine for themselves what they depicted. Further, this was the only statement to which an objection was made during the argument by the State.

While severe, the statement was isolated to this one instance.

As to the curative measures undertaken by the trial court, the trial court made the appropriate attempts to cure the improper argument by immediately instructing the jury to disregard the prosecutor's improper statement, and Coleman does not argue that the instruction given was improper or otherwise erroneous. Additionally, the jury charge on punishment instructed the jury to only consider the evidence presented to them, to consider any extraneous bad acts only if proven beyond a reasonable doubt, and to follow the instructions given by the trial court.

The remaining consideration is the certainty of the punishment assessed absent the improper argument. The range of punishment for this offense was 25 to 99 years or life in prison, and Coleman was sentenced to 48 years in prison. As we have indicated earlier, the evidence as to the assaults was compelling, and the photographs show that the victim suffered injuries from both assaults. Perhaps most significant, however, is that Coleman had 18 prior convictions for felony and misdemeanor offenses including possession of methamphetamine and crimes against women including harassment and criminal mischief.

Balancing the factors listed above, we hold that the statements were not "clearly calculated to inflame the jury to such a degree that withdrawing the impression [was] impossible." See *Davis*, 894 S.W.2d at 474-75. Therefore, it was reasonable for the trial court to believe that its instruction to disregard was effective and that any prejudice that

Coleman might have suffered from the prosecutor's improper remark was outweighed by the trial court's curative measures and the certainty of the punishment assessed absent the improper argument. We conclude that the trial court did not abuse its discretion in denying the request for a mistrial. We overrule Coleman's sole issue.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Smith, and
     Justice Wright[1]
Affirmed
Do not publish
Opinion delivered and filed May 17, 2023
[CRPM]



---

[1] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.