COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



JAVIER RIVERA FRANCO,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-06-00281-CR



Appeal from the


283rd District Court


of Dallas County, Texas


(TC# F-0545718-T)


O P I N I O N


 This is an appeal from a conviction for the offense of evading arrest or detention using a
vehicle. Appellant pleaded guilty and the jury assessed punishment at two years' imprisonment in
the State Jail Division of the Texas Department of Criminal Justice. (1) We affirm the trial court's
judgment.

I. SUMMARY OF THE EVIDENCE

 On December 21, 2005, in Rowlett, Texas, in Dallas County, William and Cynthia Rudd
were returning home around 10:30 p.m. with their two sons from Christmas activities. Mrs. Rudd
was sitting in the passenger seat. Mr. Rudd was in the rear seat on the passenger side. One son was
driving and the other was sitting in the rear seat on the driver's side. While waiting for a left turn
signal at a stoplight, Mrs. Rudd noticed the driver of the car in the lane to her right trying to get her
attention. Mrs. Rudd turned to look and saw a man angrily mouthing words to her. She was unable
to hear what was said, because her window was rolled up. Mr. and Mrs. Rudd then saw the man
point a gun at her. Mr. Rudd told his family not to look in the direction of the man. The left turn
signal then turned green. As the Rudds were making a left turn, the threatening driver sped through
the red light. Mr. Rudd was able to see the car's license plate number and relayed it to a 911
dispatch operator. Mrs. Rudd testified that the driver was the Appellant.

 The incident was dispatched to Rowlett Police Lieutenant Craig Watson. Lieutenant Watson
was driving a distinctively-marked squad car. Within a few minutes of the dispatch, he spotted the
reported vehicle traveling northbound and called for back-up. Lieutenant Watson activated his in-car
video and continued to follow the reported car. The vehicle turned into a residential neighborhood,
accelerated, and sped through several stop signs, before eventually stopping after turning onto a
dead-end street. As Lieutenant Watson was exiting his vehicle to proceed with the arrest, Appellant
discharged a gun. Neither Lieutenant Watson nor his vehicle was hit by this gun shot. Lieutenant 
Watson returned fire, firing fifteen rounds. Lieutenant Watson reloaded and moved to a better
position of cover. Officers surrounded and approached Appellant's vehicle, whereupon Appellant
surrendered.

II. DISCUSSION


 In Issue One, Appellant argues that the trial court abused its discretion by denying his motion
to quash the jury panel because of prejudicial remarks made by a potential juror during voir dire. 
Appellant argues that it can reasonably be assumed that the prospective juror's statements were
prejudicial to the Appellant's case. Appellant asserts that the entire panel of prospective jurors
should have been dismissed and that failure to do so was reversible error.

 Following the State, Appellant's trial counsel continued voir dire examination by asking
generalized questions of the potential jurors. Following a general explanation of how the State can
prove intent, Appellant's trial counsel asked whether there were any further questions. The
following exchange took place between Appellant's attorney and a potential juror, in the presence
of all other potential jurors:

 PROSPECTIVE JUROR: Yes. I have got a problem. I own guns. Just like
everybody else, I hunt. The only time I carry a gun in the car is when I'm going to
the hunting lease or going hog hunting. Why do people carry a gun in the car? Why
did he have to have a gun in the car? Is he that bad of a person?


 DEFENSE: There's, you know, you are assuming by your question that the State's
already proven their case.


 PROSPECTIVE JUROR: No, I'm not. All I'm asking is why did he have a gun if
[sic] the car, I mean, that's just a logical question, isn't it? I mean--or did he take the
gun away from an officer that was supposed to have committed attempted capital
murder?


 DEFENSE: Well, I think by your question you are assuming that the State has
already proven their case and that he was somehow in the car. The indictment
doesn't set out either of those points.


 PROSPECTIVE JUROR: Well, I assume that he was in a car at the time resisting
arrest. He might have been running, but what was he still having a pistol or gun for
or why?


 DEFENSE: Well, that's not part of the voir dire. That's--I'm just saying by your
question you're not putting the State to their burden of proof in regards to what they
have to prove. People can carry guns in all sorts of situations to where it's legal. We
have concealed handguns.


 PROSPECTIVE JUROR: I'm a former police officer, myself. I have two
brothers-in-law that are retired cops, so I'm very well aware of the law.


 DEFENSE: I think the question was, why did he have a gun in a car?


 PROSPECTIVE JUROR: A car, on himself, on his person, if he was running
through a field when they tried to catch him or what.


 DEFENSE: We can't go into that. Is there anybody else that has a question?


 Appellant's trial counsel continued voir dire examination of the potential jurors. At the end
of voir dire, the prospective juror was stricken for cause. Appellant then moved to quash the entire
panel due to the prospective juror's remarks. The court denied that request.

 A trial court has broad discretion over the voir dire process. Hankins v. State, 132 S.W.3d
380, 384 (Tex. Crim. App.), cert. denied, 543 U.S. 944, 125 S. Ct. 358 (2004). We review a trial
court's denial of a motion to quash a jury panel under an abuse of discretion standard. Mendoza v.
State, 552 S.W.2d 444, 447 (Tex. Crim. App. 1977). To prove error due to improper juror comments
which precipitated a motion to quash the jury panel, a defendant must show (1) that other members
of the panel heard the remark, (2) that the jurors who heard the remarks were influenced to the
prejudice of the defendant, and (3) that the juror in question or some other juror who may have had
a similar opinion was forced upon the defendant. Callins v. State, 780 S.W.2d 176, 188 (Tex. Crim.
App. 1986), cert. denied, 497 U.S. 1011, 110 S. Ct. 3256 (1990) (quoting Johnson v. State, 151 Tex.
Crim. 110, 205 S.W.2d 773, 774 (1947)).

 In this case, we can infer from the record that other members of the panel heard the exchange
between Appellant's counsel and the prospective juror, because the statements were made in open
court. The prospective juror was sitting with the panel and participating in the questioning
conducted by Appellant's counsel during voir dire. Since the exchange was sufficiently audible for
the court reporter to record it, we infer that other members of the panel heard the prospective juror's
remarks. See McGee v. State, 923 S.W.2d 605, 606-08 (Tex. App.--Houston [1st Dist.] 1995, no
pet.).

 Appellant argues that we should also infer that other potential jurors were influenced by the
remarks and that those jurors were forced upon the Appellant, because of the trial court's refusal to
quash the entire panel. We decline to make this inference for two reasons. First, Appellant presents
no evidence that there was another, similarly-prejudiced, juror on the panel. Appellant does not
point to evidence that any other juror held a similar opinion as the potential juror who made the
statement. Neither does the Appellant point to any evidence that a prejudiced juror was forced upon
him. The potential juror who made the statement was removed for cause. Thus, the Appellant
presents no evidence to support the inference he proposes.

 Second, such an assumption discounts the ability of potential jurors to weigh the merit of
another juror's statements. In Young v. State, the Court of Criminal Appeals concluded that the
statements of a potential juror during voir dire were not sufficient for a mistrial, even though they
concerned a central issue in the case. Young v. State, 137 S.W.3d 65, 72 (Tex. Crim. App. 2004).
In Young, the defendant was convicted of aggravated sexual assault of a child. Id. at 67. The
testimony and credibility of the child were central to the case. Id. at 71. During voir dire, a potential
juror stated that, in her twenty-five years' experience in social work, she had never had a child lie
about being sexually assaulted. Id. at 67-68. The Court explained that "even without an instruction
from the court, it seems probable that other members of the venire, drawing on their own experiences
regarding the truth-telling tendencies of young children, would question the veracity of [the potential
juror's] statements that she had never known a child with whom she worked to lie." Id. at 71. 
Similarly, in this case, it seems probable that other members of the venire would be able to
independently assess whether the potential juror's statements regarding the type of person who
carries a gun were meritorious. Like the Court of Criminal Appeals, we decline to assume that jurors
are so easily prejudiced.

 Even though we can assume, based on the facts of the voir dire, that other potential jurors
heard the exchange, we will not assume that the other potential jurors were influenced by the
statements. The Appellant points to no evidence supporting this inference and potential jurors are
able to weigh the merit of other potential jurors' statements. Moreover, even assuming arguendo
that other jurors were prejudiced by the remarks, we cannot infer without further evidence that one
of those jurors was forced upon the Appellant. The Appellant points to no evidence that a prejudiced
juror was forced upon him. Therefore, the trial court did not abuse its discretion in denying
Appellant's motion to quash. Appellant's first issue is overruled.

 In his second issue, Appellant asserts that the trial court erred in denying his motion for a
mistrial. We review a trial court's denial of a motion for a mistrial under an abuse of discretion
standard. Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A trial court abuses its
discretion when the decision lies outside the zone of reasonable disagreement. Apolinar v. State, 155
S.W.3d 184, 186 (Tex. Crim. App. 2005). A mistrial is required only when the improper question
is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of
withdrawing the impression produced on the minds of the jurors. Ladd v. State, 3 S.W.3d 547, 567
(Tex. Crim. App. 1999). A trial court may properly exercise its discretion to declare a mistrial, if
an impartial verdict cannot be reached. Id. Whether an error calls for a mistrial is determined by
examining the particular facts of the case. Id. Asking an improper question will seldom call for a
mistrial, because, in most cases, the harm can be cured by an instruction to disregard. Id. We
presume the jury followed the trial court's prompt admonition to disregard improper evidence. 
Hinojosa v. State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). In reviewing the efficacy of the
curing instruction, we look at the following factors: (1) the nature of the error; (2) the persistence
of the prosecution in committing the error; (3) the flagrancy of the violation; (4) the particular
instruction given; (5) the weight of incriminating evidence; and (6) the harm to the accused, as
measured by the severity of the sentence. Waldo v. State, 746 S.W.2d 750, 754 (Tex. Crim. App.
1988).

 Prior to trial, Appellant filed a motion in limine requesting a hearing outside the presence of
the jury, if the State intended to elicit evidence regarding his prior convictions. The trial court
granted Appellant's motion. At the punishment phase of the trial, evidence was admitted detailing
Appellant's previous convictions for various crimes. Appellant called his sister, Mary Franco, to
testify on his behalf. On cross-examination, the following exchange occurred:

 STATE: Ms. Franco, I take it you grew up in the same household as Javier?


 WITNESS: I did until I was like 17 years old, 16, 17.


 STATE: And did you all grow up or spend a significant amount of your time in your
younger years in Corpus Christi?


 WITNESS: I didn't spend a lot of time with him, only because we had a big
difference in age. I'm like 15 years older than him.


 STATE: Are you familiar with the trouble he got into when he was younger?


 DEFENSE: We would object to this as not being raised by the evidence. It's also
in violation of pretrial motions in limine which have been ruled on by the Court.


 STATE: May we approach?


 THE COURT: You may.


 [Bench Conference]


 STATE: Ms. Franco--


 DEFENSE: We would ask the jury be instructed to disregard the last question by Mr.
Burns.


 THE COURT: All right. I will sustain the objection and just, if you will, just
disregard the last question.


 DEFENSE: And we also move for a mistrial.


 THE COURT: Denied.


 STATE: Ms. Franco, you have been working steadily for the last 20 years?


 WITNESS: Yes.


 STATE: What about your brother, Javier?


 WITNESS: He's -- he's worked at different companies.


 STATE: What is the longest time he ever held a job?


 WITNESS: I'm not too sure how long it's been.


 STATE: In addition to the--you were in the courtroom when we went through what
is on State's Exhibit No. 40, the different--part of his criminal record?


 WITNESS: Uh-huh.


 STATE: Did you also know that there's actually more than that?


 DEFENSE: Once again, we would object to the form of the question in that--


 THE COURT: Mr. Burns, if you could move on to a different area--


 STATE: This is actually separate.


 DEFENSE: Ask that the jury disregard.


 THE COURT: Than what we talked about?


 STATE: Yes, it is. May we approach?


 [Bench Conference]


 STATE: Ms. Franco--


 DEFENSE: Once again, we ask that the jury be instructed to disregard--first off, was
our objection sustained?


 THE COURT: I'm going to sustain it. Objection sustained.


 DEFENSE: Ask that the jury be instructed to disregard.


 THE COURT: Disregard the last question, please.


 DEFENSE: Once again, we move for a mistrial.


 THE COURT: Denied.


 Appellant urges that the seventy-five year sentence he received at the end of the punishment
phase was due, at least partially, to the impression left by the improper questions posed by the State. (2)
He claims that the severity of the punishment, the nature and form of the questions, and the State's
purpose and persistence made the instruction to disregard insufficient. Guided by the previously-cited authority, we disagree for two reasons.

 First, the trial court promptly sustained Appellant's objections and instructed the jury to
disregard the State's questions. The record is clear that the State proceeded in violation of the
motion in limine concerning Appellant's previous criminal record. The State's two attempts to elicit
further testimony regarding Appellant's criminal history are troubling, but not fatal. Appellant's
counsel promptly objected, the objection was sustained, and the jury was instructed to disregard the
State's question. As stated above, we presume that the jury followed the trial court's admonition. 
Hinojosa, 4 S.W.3d at 253. The instruction to disregard was sufficient to cure whatever harm may
have resulted from the State's improper questions.

 Second, Appellant was eligible for a sentence of "life or for any term of not more than 99
years or less than 5 years." Tex. Pen. Code Ann. § 12.32. The Court of Criminal Appeals has
stated that "the sentencer's discretion to impose any punishment within the prescribed range [is]
essentially 'unfettered,'" and that "a punishment that falls within the legislatively prescribed range,
and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." Ex
parte Chavez, 213 S.W.3d 320, 323-24 (Tex. Crim. App. 2006). Appellant's sentence is within the
prescribed range of punishment. Cf. Tex. Pen. Code Ann. § 12.32. There was abundant evidence
by which a jury could have found Appellant deserving of the sentence which he received. Appellant
was found guilty of aggravated assault, evading arrest, and attempted capital murder. This alone
could be sufficient for the sentence that Appellant received. However, Appellant had also been
convicted of previous crimes. We see no reason to attribute prejudice to the jury's assessment of
punishment, given the available evidence.

 The trial court did not abuse its discretion in denying the motion for a mistrial. Even though
the State improperly asked questions in violation of the motion in limine, the trial court's instruction
to disregard cured the harm. Ladd, 3 S.W.3d at 567. Additionally, there is no reason to attribute
prejudice to Appellant's sentence, because the sentence was supported by evidence. Thus, we find
that the trial court did not abuse its discretion in denying the motion for a mistrial. We overrule
Appellant's second issue.

III. CONCLUSION

 We affirm the trial court's judgment.


 KENNETH R. CARR, Justice


August 2, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)

1. In companion case No. 08-06-00280-CR, the jury convicted Appellant of attempted capital murder and
assessed punishment at seventy-five years' imprisonment in the Institutional Division of the Texas Department of
Criminal Justice. In another companion case, No. 08-06-00282-CR, the jury convicted Appellant of the offense of
aggravated assault and assessed his punishment at ten years' imprisonment in the Institutional Division of the Texas
Department of Criminal Justice. All three cases were tried together.
2. We note that Appellant's brief does not refer to the sentence in this case of two years' confinement in the State
Jail Division of the Texas Department of Criminal Justice. Accordingly, he has waived any contention that the sentence
in this case indicates that the instruction to disregard was insufficient to cure any error. See Tex. R. App. P. 38.1(h); King
v. State, 17 S.W.3d 7, 23 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). However, as the sentencing hearing
encompassed all three cases, we will utilize the seventy-five year sentence assessed in the attempted capital murder
companion case as a factor to consider in assessing whether the instruction to disregard was sufficient to cure any error. 
See Hardin v. State, 20 S.W.3d 84, 93 (Tex. App.--Texarkana 2000, pet. ref'd).