



## MEMORANDUM OPINION

No. 04-09-00424-CR

Ruben Daniel **MORIN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-8486
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:   September 15, 2010

AFFIRMED

A jury found Ruben Morin guilty of murdering William Swisher, and the trial court sentenced Morin to 75 years imprisonment and fined him $10,000. On appeal, we are asked to decide if the trial court erred by: (1) refusing to conduct an *in camera* hearing to determine whether to compel the State to provide the identity of a confidential informant; (2) denying Morin's motion to suppress in which he alleged authorities made false or misleading statements

in the warrant affidavit; and (3) denying Morin's motion for a mistrial after a witness remarked that Morin's tattoo was an insignia for a criminal street gang. We affirm.

## BACKGROUND

Swisher met John Villarreal at Villarreal's apartment on June 24, 2007, where the two men used cocaine. After Swisher fell asleep on Villarreal's bed, Villarreal heard someone at his door. At the door was Morin, who pushed his way into the apartment. Morin placed a gun to Villarreal's chin upon entering the apartment and asked Villarreal whether Swisher had hidden any drugs or money inside the residence. Villarreal answered negatively and Morin attempted to arouse Swisher. Morin fired his pistol to awaken Swisher, who got up upon hearing the gunshot. Morin proceeded to confront Swisher about "messing around with [his] girlfriend"[1] and asked him where he had placed his money and drugs. Swisher responded that he did not know what Morin was talking about and gave Morin his wallet and car keys. Morin grabbed the items from Swisher and then shot him in the chest and stomach. Morin "paced back and forth" and then ran out of the apartment. Swisher did not survive the gunshot wounds he received from Morin and died on the floor of Villareal's apartment.

The authorities, with the assistance of a confidential informant, located Morin at an apartment later that day. Morin was apprehended by police following a brief "scuffle," which occurred approximately forty to fifty feet away from the apartment. Officers entered the apartment from which Morin had emerged and conducted a protective sweep of the residence "to check for other combatants." During the course of their protective sweep, officers observed drugs and drug paraphernalia in plain view as well as a cleaning crew inside the apartment. San Antonio Police Officer Daniel Molina prepared a warrant affidavit and secured a search warrant

---

[1] Morin was residing with an exotic dancer, Stephanie Ruiz, at the time of Swisher's death.

for the premises. Officers executed the warrant later that day and seized, among other items, clothing they believed Morin wore at the time of Swisher's death and multiple rounds of ammunition matching the caliber of the murder weapon.[2]

Morin was indicted for the offense of murder. He pleaded not guilty and proceeded to a jury trial. The jury found Morin guilty, and the trial court sentenced Morin to 75 years imprisonment and fined him $10,000. This appeal followed.

### DISCLOSURE OF THE CONFIDENTIAL INFORMANT

In his first issue, Morin argues the trial court abused its discretion by refusing to conduct an *in camera* hearing to determine whether to compel the State to provide the identity of the confidential informant who provided information to the police about Swisher's murder. We review the trial court's ruling for an abuse of discretion. *Ford v. State*, 179 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). This court will affirm the trial court's ruling unless the court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.* In determining whether the trial court abused its discretion, we must consider all of the circumstances of the case. *Olivarez v. State*, 171 S.W.3d 283, 292 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Under Texas Rule of Evidence 508, the State has a privilege to withhold the identity of any person who provided information relating to or assisting in an investigation of a possible crime. TEX. R. EVID. 508(a). This privilege, however, is not absolute. *Williams v. State*, 62 S.W.3d 800, 802 (Tex. App.—San Antonio 2001, no pet.). "If the evidence shows that the informant may be able to give testimony essential to a fair determination of the guilt or innocence of the accused, the privilege does not apply." *Id.*; *see* TEX. R. EVID 508(c)(2).

---

[2] The murder weapon was never found by the police.

The accused bears the threshold burden of demonstrating there is a reasonable probability the informer may give testimony necessary to a fair determination of the issue of guilt or innocence. *Bodin v. State*, 807 S.W.2d 313, 318 (Tex. Crim. App. 1991); *Portillo v. State*, 117 S.W.3d 924, 928 (Tex. App.—Houston [14th Dist.] 2003, no pet.). To meet his burden, the accused must provide more than mere conjecture or speculation; he must show the informant's testimony would significantly aid the jury in determining guilt or innocence. *Bodin*, 807 S.W.2d at 318. The filing of a motion to disclose is insufficient to obtain a hearing, much less compel disclosure. *Id*. However, because the defendant may not actually know the extent of the informant's involvement, he is only required to make a plausible showing of how the testimony may be important. *Id*.

If the defendant meets this initial burden, the State must be given an opportunity to show, *in camera*, facts relevant to whether the informer can supply the alleged testimony. *Long v. State*, 137 S.W.3d 726, 732 (Tex. App.—Waco 2004, pet. ref'd). The trial court should order disclosure of the informant's identity if it finds a reasonable probability exists that the informer could give testimony necessary to a fair determination of guilt or innocence. *Portillo*, 117 S.W.3d at 928.

The record shows that during the course of investigating Swisher's murder, Officer Molina received information from a confidential informant regarding a murder on the "South Side" involving a stripper. The informant indicated "some strippers set up a drug dealer and a guy killed the dealer." The informant indicated "the suspect had hidden the gun that was used in this murder, [sic] somewhere down the street from the location of the murder." The informant also gave Officer Molina information about where the police could locate the murder suspect.

At the pretrial hearing on Morin's confidential informant motion, Officer Molina testified the informant did not participate in or witness Swisher's murder. He or she also did not observe Morin hide the murder weapon. Officer Molina confirmed the informant acquired his or her information from individuals who were not involved in the crime. He stated that the informant's information concerning the crime "had been passed along" to him or her during his or her telephone conversations with persons "other than the people that were involved in the crime."

Morin postulates that Villarreal and Stephanie Ruiz framed him for Swisher's murder based upon discrepancies between their statements to police and their trial testimony. He argues the trial court should have held an *in camera* hearing because the informant may possess information concerning the names of other persons who might confirm his defensive theory. Morin's argument amounts to nothing more than supposition and conjecture unsupported by any evidence. *See Patterson v. State*, 138 S.W.3d 643, 649 (Tex. App.—Dallas 2004, no pet.) (rejecting argument that the informant could have identified other occupants who 'could have been responsible for the contraband' as nothing more than mere conjecture or supposition unsupported by any evidence). There is no evidence in the record showing that the informant's testimony would significantly aid the jury in determining guilt or innocence. In short, there is no plausible showing of how the testimony may be important; Morin merely speculates that the informant might provide relevant information. Because Morin failed to meet his burden of demonstrating the informant's testimony would have aided the jury on the issue of guilt or innocence, we cannot say the trial court abused its discretion by refusing to conduct an *in camera* hearing. Morin's first issue is overruled.

**MOTION TO SUPPRESS**

In his second issue, Morin alleges the trial court abused its discretion in denying his motion to suppress because he proved the probable cause affidavit contained a false statement made with reckless disregard of the truth in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). When we review a trial court's ruling on a motion to suppress, we give great deference to the court's determination of historical facts supported by the record, while we review the application of the law to the facts *de novo*. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Balentine*, 71 S.W.3d at 768. The trial court at a suppression hearing, even one involving a *Franks* claim, is the sole trier of fact and the judge of the credibility of the witnesses and the weight to be given the evidence. *Hinojosa v. State*, 4 S.W.3d 240, 247 (Tex. Crim. App. 1999); *Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996). "In this case, the trial court did not make explicit findings of fact, so we will, therefore, review the evidence in a light most favorable to the trial court's ruling." *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).

In *Franks*, the Court held:

> [w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155-56. The burden is on the defendant to make a preliminary showing of the deliberate falsehoods or of statements made in reckless disregard for the truth in the affidavit for a search warrant. *Id.* at 171. The Texas Court of Criminal Appeals, in *Cates v. State*, 120 S.W.3d 352, 356 (Tex. Crim. App. 2003), discussed the three-part test for obtaining an

evidentiary hearing under *Franks*. The defendant must: (1) allege deliberate falsehoods or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false; (2) accompany these allegations with an offer of proof stating the supporting reasons; and (3) show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support the issuance of the warrant. *Cates*, 120 S.W.3d at 356. "[S]pecific allegations and evidence must be apparent in the pleadings in order for a trial court to even entertain a *Franks* proceeding." *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007).

If a defendant establishes the requisites of a substantial preliminary showing required to obtain a full *Franks* evidentiary hearing, he has the burden of establishing the allegation of a falsehood or a reckless disregard for the truth by a preponderance of the evidence. *Id.* At the *Franks* hearing, a defendant may present evidence that goes beyond the four corners of the affidavit underlying the search warrant. *Cates*, 120 S.W.3d at 355 n.3. Whenever the trial court finds that the defendant has sustained his burden of proof, the false information in the affidavit must be disregarded. *Harris*, 227 S.W.3d at 85. If the remainder of the affidavit is not sufficient to support the issuance of the search warrant, the warrant is voided and the evidence seized under the warrant is excluded. *Id.*

The warrant affidavit at issue provides:

> Off[icer] . . . Daniel Molina . . . has good reason to believe and does believe that a certain place . . . known as . . . the Meadow Run Apartments and located at 5347 Blanco Road Number J-4 . . . in San Antonio, Bexar County, Texas and being the premises under the control . . . of Morin, . . . is a place where . . . Cocaine . . . is unlawfully possessed . . . and that such belief is founded upon the following information: I was assigned to contact and detain the above listed person who [is a suspect] in a capital murder, but who had yet to be identified. Surveillance showed Ruben Morin contacting several individuals and speaking with them, after which they departed in separate directions, so that we had no idea where Ruben Morin's friends had gone. **After detaining Ruben Morin and Stephanie Ruiz**

> **at this location** (Ruben Morin was found to be active on three municipal court warrants) a protective sweep was made of the apartment to check for other combatants, as we did not know if some other individuals contacted by Ruben Morin were in that apartment and were possibly armed. We also noticed that Ruben Morin had hired a carpet cleaning service to clean his apartment and therefore feared that valuable evidence might be destroyed. Det. Ripley #2131 and Det. Phillips #2421 entered this apartment and contacted the workers inside. While making contact with the carpet cleaners Det. Phillips observed a small zip lock baggie with cocaine in plain view resting on the kitchen table. Det. Phillips also observed a marijuana bong in the living room along with a digital scale in an open kitchen cabinet.

(emphasis added). Morin alleges the affiant, Officer Molina, deliberately made a false or misleading statement when he stated Morin was detained "at this location," *i.e.*, the apartment, because he was actually "arrested 40 or 50 feet away from the apartment."

At the pretrial suppression hearing, the State presented the only witness to testify — Officer Molina. It was through Officer Molina's testimony that Morin alleges he established his *Franks* claim by a preponderance of the evidence. Officer Molina testified he was asked to establish surveillance at an apartment complex on June 24, 2007 in connection with a homicide investigation involving a male suspect named "Spank." Officer Molina stated he received information concerning the whereabouts of the murder suspect (Morin) from a confidential informant.

During the course of the surveillance operation, between 3:30 p.m. and 4:00 p.m., officers observed Morin "coming down from the apartment" with Ruiz. Once Morin had "made it down the stairway and was walking on the sidewalk," officers made contact with him. Officers and Morin engaged in a brief "scuffle," which resulted in the officers detaining and arresting Morin on several outstanding municipal court warrants.

Several officers proceeded to enter the second floor apartment from which Morin had emerged. Officer Molina testified that "[w]e had seen quite a bit of people in and out of the

apartment" and "a lot of traffic." According to the officer, "we weren't sure whether there were still other people inside . . . the apartment, so therefore we go inside the apartment, make sure that somebody else is not there, either, number one, destroying evidence or, two, could possibly pose a danger to us." Officer Molina further stated:

> For sure we didn't know if there was anybody else in that apartment that could have shot at us. They have an advantage of being up in an upper balcony, or just down below to the adjacent building. That was our concern. That's why Detective Ripley and Detective Phillips went up in the apartment to make sure that there was nobody else in that apartment, and that was to prevent anybody or from us getting ambushed.

Officer Molina confirmed that he was close enough to the apartment at issue to have been hit by a bullet fired from that particular location. The fact that Morin was a suspect in a murder investigation increased Officer Molina's level of concern about the possibility of another danger inside the apartment. When Officer Molina was questioned by defense counsel at the suppression hearing about what he meant when he stated in the warrant affidavit that Morin was detained "at this location," the officer responded "[j]ust outside the apartment."

Officer Molina further stated they observed carpet cleaners at the suspect's apartment during the course of their surveillance operation. According to Officer Molina, "it was raining frequently and heavily at times, so it was just weird to see a carpet cleaning crew working under those conditions." The officer confirmed he was concerned that the carpet cleaning crew was potentially destroying evidence.

Although Morin claims Officer Molina's statement that Morin was detained "at this location" was a false statement made with reckless disregard of the truth, there was no showing during the suppression hearing that the officer's statement was made with the type of knowledge, intent, or recklessness as contemplated by *Franks*. Officer Molina was never asked during the suppression hearing whether the statement in his affidavit was a false statement, a knowing or

intentional misrepresentation, a statement made in reckless disregard for truth, or a mistake. Rather, Officer Molina was simply asked about what he meant when he stated Morin was detained "at this location." Officer Molina clarified that it meant Morin was detained "[j]ust outside the apartment."

Having reviewed the record and the applicable standards of review, we conclude Morin failed to establish by a preponderance of the evidence that Officer Molina intentionally made a false statement or one in reckless disregard for the truth in his search warrant affidavit. The trial court, based upon the testimony it heard at the suppression hearing, could have reasonably concluded that Officer Molina's inclusion of the statement "at this location" in the warrant affidavit was at best a general description of the apartment complex area, or at worst, an innocent mistake on the part of the officer as opposed to an intentional or reckless misstatement. A misstatement in an affidavit that is an innocent mistake or the result of simple negligence will not render invalid the warrant based on it. *Franks*, 438 U.S. at 171. Accordingly, we hold the trial court did not abuse its discretion in connection with Morin's suppression motion and overrule his second issue.

## MOTION FOR MISTRIAL

In his third issue, Morin claims the trial court abused its discretion when it denied his motion for a mistrial after a witness remarked that Morin's tattoo was an insignia for a criminal street gang. During Officer Chad Ripley's testimony, the State asked Ripley to describe the scene in a photograph identified as State's Exhibit No. 24. Ripley replied as follows:

> We are looking at two pictures that were taped to the wall in one of the bedrooms. The picture on our left is of Stephanie, his girlfriend at the time. The picture on the right has got a Chuck E. Cheese border, so I guess Mr. Morin was standing in front of the mouse when he took that picture. He has got his arm up raised to show his Spurs Tattoo, which is an insignia for criminal street gang.

Defense counsel objected to the officer's statement, complaining the answer concerned extraneous conduct and violated the motion in limine. The trial court sustained defense counsel's objection. Defense counsel moved for a mistrial, but the trial court denied the motion. Morin did not ask the trial court to instruct the jury to disregard Officer Ripley's statement before (or after) seeking the mistrial.

An instruction to disregard attempts to cure any harm or prejudice to the defendant resulting from events that have already occurred. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). "Where the prejudice is curable, an instruction eliminates the need for a mistrial, thereby conserving the resources associated with beginning the trial process anew." *Id*. The preferred sequence of events to preserve error concerning objectionable material is as follows: "(1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient." *Id.* When the defendant skips one part of the sequence and requests a mistrial, our review is limited "to the question of whether the trial court erred in not taking the most serious action of ending the trial." *Id*. at 70. "[A]n event that could have been . . . cured by an instruction to the jury will not lead [us] to reverse a judgment on appeal by the party who did not request these lesser remedies in the trial court." *Id*.

Courts have routinely deemed instructions to disregard adequate to cure error where witnesses have violated a motion in limine or referenced an extraneous matter. *See Whitaker v. State*, 977 S.W.2d 595, 600 (Tex. Crim. App. 1998) (concluding instruction was sufficient to cure any error in capital murder case when witness testified appellant "was physically and mentally abusive towards her" and "beat her up"); *Herrero v. State*, 124 S.W.3d 827, 835 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (concluding instruction cured error in murder case

when witness testified police promised him protection against appellant's death threat if witness testified); *Martinez v. State*, 844 S.W.2d 279, 284 (Tex. App.—San Antonio 1992, pet. ref'd) (concluding instruction cured error in murder case when officer testified that appellant threatened the intended target and shot at his house). In fact, courts have specifically held that instructions to disregard are sufficient to cure any harm or prejudice resulting from an objectionable statement concerning gangs or gang affiliation. *Bridgewater v. State*, 905 S.W.2d 349, 354 (Tex. App.—Fort Worth 1995, no pet.); *Beasley v. State*, 864 S.W.2d 808, 812 (Tex. App.—Fort Worth 1993), *aff'd*, 902 S.W.2d 452 (Tex. Crim. App. 1995). We believe that an appropriate instruction to disregard could have cured any prejudice resulting from the "gang" remark by Officer Ripley. Accordingly, the trial court did not abuse its discretion by denying the motion for mistrial. Morin's third issue is overruled.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH