

NUMBER 13-11-00452-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RONALD ALBERT WHITMAN,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

On appeal from the 54th District Court
of Montgomery County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Garza**

Appellant, Ronald Albert Whitman, was convicted of five counts of aggravated sexual assault of a child, a first-degree felony, and three counts of indecency with a child by contact, a second-degree felony. *See* TEX. PENAL CODE ANN. §§ 21.11 (indecency with a child), 22.021 (West Supp. 2010) (aggravated sexual assault). He was sentenced to sixty years' imprisonment for each of the assault counts, and fifteen

years' imprisonment for each of the indecency counts, with the sentences to run consecutively. On appeal, Whitman contends that the trial court erred (1) by permitting a physician to testify about statements made by the complainant, and (2) by denying a motion for mistrial based on statements made by the prosecutor in her punishment argument. We affirm.[1]

## I. BACKGROUND

Complainant S.J. was eighteen years of age at the time of trial. Whitman was her paternal grandmother's husband. S.J. recalled that, before the time she was of elementary school age and continuing throughout elementary school, Whitman started "kissing [her] in a weird way that you don't kiss your granddaughter" and "started touching [her] chest." S.J. stated that "[i]t started with his hand on top of my shirt and then—then under my shirt. . . . He would touch my breasts." Whitman once told S.J. not to tell anyone about his actions. Later, Whitman "started to touch down here," meaning her "private area," with his fingers. He later put his fingers in her vagina, "put his mouth down there," and "would make me put my mouth on his private area." After the touching, according to S.J., "he would—he eventually had sex with me." S.J. testified that these actions took place "[j]ust about every time" she was picked up by her grandmother and Whitman and taken to their trailer home in Robinson, Texas. S.J. stated that abuse "didn't feel good at all," that it "hurt," and that "[s]tuff came out" when Whitman "decided he was done." S.J. did not tell anyone about the abuse at the time, but eventually told her mother. S.J. stated that, when she was younger, she would try not to think about the abuse and was afraid to tell anyone about it, but that "[n]ow that

---

[1] This appeal was transferred from the Tenth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[she is] older, [she] can handle" speaking about it.

S.J. further testified that she visited Ann Sims, M.D., at the request of the prosecutor who had been handling the case at the time. Dr. Sims is the medical director at the Advocacy Center for Crime Victims and Children ("Advocacy Center") in Waco, Texas. Dr. Sims testified that during her meeting with S.J., which occurred only a few days before Whitman's trial, S.J. gave a medical history. Dr. Sims testified as follows:

> [S.J.] told me that Ronald Whitman, the man to whom her dad's mother used to be married, had started kissing her and touching her breasts when she was five. And she said it progressed. Progressed was her word that she used. From touching down here and making me touch him until he made—and this is her words—"made me have sex with him." She said it went on until she was nine, but evidently, he was no longer in the home. . . . [S]he said she would—that she and her [younger] brother would either sleep with Ron in his bed or sleep on a pallet on the floor and that when she was sleeping in Ron's bed, that he . . . would either move her brother to the other side or if they were sleeping—or if they were awake and not asleep, he would tell her brother to leave the room or leave.
>
> And [S.J.] said, and I quote what she said[,] she . . . would try not to let her brother know what was going on.
>
> She said Ron would first start touching her and then he would take her shorts and underwear off and put his penis in her vagina. And she said that his penis would go through the outer lips where the hair was and would go into the vagina and through the vaginal opening into the vagina. She said that it would hurt but she doesn't remember it causing any bleeding. And she said, clear stuff would come out, and if it came out on her, that he would, and in her words, "wipe me up with a wash cloth, and otherwise, he would let it come out into a towel." She said he also put his fingers in her vagina and that he would make her rub his penis with her hand and sometimes there would be clear stuff left in her hand and—or he would make her put her mouth on his penis. He said—she said, he would also put his mouth on her genital area before he put his penis in.

Defense counsel repeatedly objected to Dr. Sims' testimony as hearsay. The trial court overruled the objections.

3

The jury found Whitman guilty on all eight charges. During the State's closing argument at the punishment phase, the following exchange occurred:

[Prosecutor]: I mean, I hope when you go back there you're not thinking about the minimum. This is not an 18 year old on a 13 year old. It's someone who was grandpa. . . . You heard this was the only grandpa [S.J.] had and this is what he did to her. Now, I know you haven't heard from him and, you know, I was thinking, man, it must be hard to go back there and decide what numbers to put on something you haven't even heard someone talk [sic]. You heard, not guilty.

[Defense counsel]: Your Honor, I'm gonna object. That's a comment on his failure to testify.

THE COURT: I'll sustain the objection.

[Defense counsel]: Ask the Court to instruct the jury to disregard.

THE COURT: I'll instruct the jury to disregard the last comment of counsel.

[Defense counsel]: Move for a mistrial.

THE COURT: That's denied.

The jury subsequently set punishment at sixty years' imprisonment for each of the aggravated sexual assault counts and fifteen years' imprisonment for each of the indecency with a child counts. The trial court ordered the sentences to run consecutively. This appeal followed.

## II. DISCUSSION

### A. Admission of Physician Testimony

By his first issue, Whitman argues that the trial court erred by permitting Dr. Sims to testify as to what S.J. reported during their meeting at the Advocacy Center. We review a trial court's decision to admit evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We will find an abuse of discretion

only if the trial court's decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay testimony is generally inadmissible, but certain exceptions apply. TEX. R. EVID. 802. One exception, applicable regardless of whether the declarant is available to testify, is for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." TEX. R. EVID. 803(4).[2] This exception applies when the "declarant believe[s] that the information [s]he conveys will ultimately be utilized in diagnosis or treatment of a condition from which the declarant is suffering, so that [her] selfish motive for truthfulness can be trusted." *Taylor*, 268 S.W.3d at 587. Moreover, the proponent of such hearsay evidence must show that the statement proffered is "pertinent to . . . treatment"; i.e., "that it was reasonable for the therapist to rely on the particular information contained in the statement in treating the declarant." *Id.* at 591.

Whitman argues that the statements made by S.J. to Dr. Sims "were not made for the purpose of diagnosis or treatment, but were made so that the experienced and

---

[2] In its appellee's brief, the State argues that Dr. Sims' statements were admissible under this rule as well as under Texas Rule of Evidence 801(e)(1)(B). *See* TEX. R. EVID. 801(e)(1)(B) ("A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ."). We need not address the merits of these arguments in light of our conclusion that any error in admitting the testimony would be harmless.

impressive Dr. Sims could be called on to testify at Appellant's trial." However, Dr. Sims testified that she has specialized training in treating conditions related to sexual abuse, and that she always asks her patients for a thorough medical history prior to making any diagnosis. In this case, Dr. Sims found that S.J. had a "notch" on her hymen, which was a "suspicious" finding consistent with what S.J. had told her about the abuse she suffered.

Even assuming that the trial court abused its discretion by admitting Dr. Sims' testimony, we find no reversible error. Two other witnesses—S.J.'s primary care physician and her primary obstetrician/gynecologist—testified without objection that S.J. reported being sexually abused by Whitman. The improper admission of evidence will be rendered harmless if the same or similar evidence is admitted without objection at another point in the trial. *Coble v. State*, 330 S.W.3d 253, 282 n.82 (Tex. Crim. App. 2010); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see also* TEX. R. APP. P. 44.2(b). Accordingly, any error in admitting Dr. Sims' testimony as to S.J.'s reports of sexual abuse would be harmless.

We overrule Whitman's first issue.

## B. Motion for Mistrial

By his second issue, Whitman contends that the trial court erred in denying his motion for mistrial after the prosecutor referred to the fact that Whitman did not testify. We review such a ruling for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

Proper jury argument falls into four well-defined categories of discussion: (1) a summation of the evidence; (2) reasonable deductions from the evidence admitted for consideration by the jury; (3) a rejoinder to argument by opposing counsel; and (4) a

6

plea for law enforcement. *Cantu v. State*, 842 S.W.2d 667, 690 (Tex. Crim. App. 1992). The fact that a defendant did not testify does not fall into any of these categories and may not be the subject of comment by the prosecution. *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). Such comments run afoul of article 38.08 of the Texas Code of Criminal Procedure and violate the privilege against self-incrimination contained in the United States and Texas Constitutions. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (West 2010) ("The failure of any defendant to . . . testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."). Here, the trial court properly sustained defense counsel's objection to the prosecutor's reference to the fact that Whitman did not testify. *See Moore v. State*, 849 S.W.2d 350, 352 (Tex. Crim. App. 1993) ("Argument will constitute a comment upon the defendant's failure to testify if the language used [is] manifestly intended or [is] of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify.").

In determining whether the trial court erred in denying Whitman's motion for mistrial, we balance three factors: (1) the severity of the misconduct (i.e., prejudicial effect); (2) any measures taken to cure the misconduct; and (3) the certainty of the punishment assessed absent the misconduct (i.e., the likelihood of the same punishment being assessed). *Hawkins*, 135 S.W.3d at 77 (citing *Martinez v. State*, 17 S.W.3d 677, 693–94 (Tex. Crim. App. 2000)). Mistrial is the appropriate remedy when the objectionable comments "are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004).

7

We first address the severity of the prosecutor's misconduct. The State claims that the prosecutor's comments "did not prejudice Appellant or affect the punishment verdict in any way." We cannot agree that the statements had absolutely no prejudicial effect, though we do find that any prejudicial effect would have been minimal. The prosecutor observed that the jury "ha[s]n't heard from [Whitman]" other than his not guilty plea, and therefore that it "must be hard to go back there and decide what numbers to put" on the punishment verdict form. This statement may have been minimally prejudicial in that it may have implied to the jury that their job in setting punishment would have been made easier had Whitman testified. That said, the prosecutor's statement was not "emotionally inflammatory" such that a proper curative instruction could not have prevented any prejudicial effect. *See id.*

Unfortunately, as we turn to the second balancing factor, we observe that the trial court's curative instruction was, in fact, far from ideal. After sustaining the objection, the trial court instructed the jury to "disregard the last comment of counsel," which the jury may or may not have understood to mean the last comment made by *the prosecutor*. Taken literally, "the last comment of counsel" was defense counsel's request to instruct the jury to disregard. On the other hand, the context in which trial court's instruction was given strongly indicated that it was the prosecutor's "last comment" which the jury was supposed to disregard. In any event, we cannot be sure that the curative instruction was effective. Accordingly, the first and second factors weigh slightly in favor of a mistrial.

However, the third factor—the likelihood of the same punishment being imposed absent the misconduct—weighs very heavily against a mistrial. Whitman does not explain on appeal how the jury would have reached a different conclusion as to

8

punishment had the objectionable comments not been made. Further, as noted, any prejudicial effect of the comments was minimal; and any such prejudice would have pertained only to the jury's perceived burdensomeness of its task in assessing punishment, not to the nature or severity of the crimes of which Whitman was convicted. Finally, we note that the evidence of Whitman's guilt was overwhelming and that the nature of his crimes—repeated sexual assaults of an elementary-school-age girl who called Whitman her grandfather—is particularly heinous. Accordingly, we find that there is an extremely strong likelihood that, absent the prosecutor's objectionable remarks, the same punishment would have been meted out.

Balancing all three factors as elucidated in *Hawkins*, 135 S.W.3d at 77, we conclude that the trial court did not abuse its discretion in denying Whitman's motion for mistrial. His second issue is overruled.

## III. CONCLUSION

The judgment of the trial court is affirmed.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Delivered and filed the
2nd day of February, 2012.

9