**Affirm and Opinion Filed June 23, 2022**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-21-00256-CR**
_____

**KENNETH SAID CRUZ-BANEGAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-81093-2019**

## MEMORANDUM OPINION

Before Justices Myers, Carlyle, and Goldstein
Opinion by Justice Carlyle

A jury convicted appellant Kenneth Said Cruz-Banegas of continuous sexual abuse of a young child and assessed punishment at thirty-three years' imprisonment. Mr. Cruz-Banegas contends the evidence is insufficient to support his conviction and the trial court abused its discretion by denying his motion for mistrial based on a witness's "outburst." We affirm in this memorandum opinion.

## Background

The indictment in this case alleged that during a period of thirty days or more, Mr. Cruz-Banegas committed two or more acts of sexual abuse against the

complainant, S.D., while she was under fourteen years old and he was older than seventeen. The alleged acts of sexual abuse included penetrating S.D.'s sexual organ with his finger, contacting S.D.'s anus with his sexual organ, causing S.D.'s hand to contact his genitals, and contacting S.D.'s genitals with his hand.

At the time of trial, S.D. was seventeen years old. She testified she was born in 2003. Mr. Cruz-Banegas is married to her mother's sister, Lindsey, and she has known him "as long as I can remember." When S.D. was younger, she had a good relationship with Mr. Cruz-Banegas and loved him. He treated her "special" compared to her siblings.

She testified that the first time he did something inappropriate with her was when she was in fifth grade, which was about 2013. Mr. Cruz-Banegas and Lindsey were living at S.D.'s grandmother's house, where S.D. and her sister went each day after school. S.D. often went to "Ken and Lindsey's bedroom" to do her homework because Mr. Cruz-Banegas helped her more than her grandmother would. One day when Mr. Cruz-Banegas and S.D. were alone in the bedroom, he asked her about school and she told him her class had had "the puberty talk" that day. He told her he could show her "what they were talking about." He lifted up the blanket that was covering him and she saw his penis. She stated he "made me feel his penis" and "his penis touched my hand." She backed away and told him she was leaving.

Another time after that, she was doing her homework in that same bedroom at her grandmother's house and fell asleep. When she woke up, her hand was around

Mr. Cruz-Banegas's penis and his hand was over hers, "making [her] hand go up and down." She asked him what he doing and he told her "this is all normal." She got up and left the room. She testified there were "a lot" of other incidents when her hand contacted his penis and "the details of those times run together."

S.D. testified Mr. Cruz-Banegas also sexually abused her in other ways. One time, she was in Ken and Lindsey's bedroom at her grandmother's house after school and was wearing a maroon dress. She and Mr. Cruz-Banegas were sitting on the end of the bed talking about school and homework. He tried to pull up her dress and she "kept pulling it down." She stated she finally just "let it happen" and he removed her underwear and started "touching" her vagina with his hand. He touched "the outside at first" and then his fingers "went inside."

About a year after Mr. Cruz-Banegas began sexually abusing her, there was an incident she referred to as "the big thing." At that time, she lived in a townhome with her mother, step-father, and siblings. Mr. Cruz-Banegas and Lindsey came to the townhome to watch a movie. S.D. did not want to watch the movie and went upstairs to her bedroom. At some point, Mr. Cruz-Banegas came upstairs to her bedroom while everyone else remained downstairs. As the two of them were talking, he "kind of grabbed my wrist and stood me up." She stated "he turned me around and he bent me over, pulled down my pants, and he pulled down his pants and he stuck his penis inside my butthole." He slid his penis in and out two or three times.

S.D. stated it hurt so much she "couldn't breathe." Then, he pulled up his pants and left to go to the bathroom.

At some point after "the big thing," S.D. asked Mr. Cruz-Banegas whether she was still a virgin after what he did to her. He said yes and told her not to tell anyone because "you will get in trouble, I will get in trouble, you could go to jail." She testified that the "entire time" the abuse was happening, she was under fourteen years old and Mr. Cruz-Banegas was over seventeen.

S.D. testified that though Mr. Cruz-Banegas did not sexually abuse her again after "the big thing," he acted inappropriately with her numerous times. One time, he told her he would buy her a new cell phone if she would "suck his penis." Another time, he asked her to lock the bedroom door and come sit next to him, but she refused and walked away. On other multiple occasions, he (1) "bear-hugged" her "very tightly," sometimes while lying down, or (2) kissed her on the lips and put his tongue in her mouth.

In February 2017, S.D. was forensically interviewed in an unrelated sexual assault case as a "follow-up witness for my friend." When she got home, she "broke down" and told her mother "some of what had happened" regarding Mr. Cruz-Banegas. She did not tell her mother everything because she was scared she would get in trouble. She told her mother not to report it and threatened to take her own life if her mother did so.

A few months later, S.D.'s mother asked her if it would be okay for Mr. Cruz-Banegas and Lindsey to move in with S.D.'s family. S.D. said yes because "they are family and we cannot leave our family in the streets." At that point, S.D. told her mother "a little bit more of what happened," but "never told her the full story." Sometime after that, her mother told her she had to go to a forensic interview regarding Mr. Cruz-Banegas's abuse. S.D. stated she felt "extremely hurt" that "my story had been let out," but she told the forensic interviewer the truth.

McKenzie McIntosh testified she conducted a May 22, 2018 forensic interview of S.D. at the children's advocacy center for Collin County. She stated S.D. made a delayed outcry of sexual abuse and talked about several instances, including the above-described incidents. S.D. identified Mr. Cruz-Banegas as the perpetrator. Ms. McIntosh saw no "red flags" or signs of coaching or exaggeration. She conducted a follow-up forensic interview of S.D. about one week later in which S.D. provided details consistent with the first interview.

Dr. Kristen Reeder, a "child abuse pediatrician," testified she conducted a sexual abuse examination of S.D. on August 20, 2018, for medical evaluation purposes. S.D.'s exam was "normal," which is the most common result in sexual abuse examinations and does not mean no abuse occurred.

S.D.'s mother testified she served in the military while S.D. was growing up. During Mother's deployments, S.D. and her siblings stayed with Mother's mother. When S.D. was in sixth or seventh grade, Mother and her husband and children were

living in a townhome. In about 2017, Mother's sister, Lindsey, and Mr. Cruz-Banegas moved into the townhome with them.

Mother first learned of "something going on" regarding Mr. Cruz-Banegas in a conversation with S.D. after S.D. was interviewed at the advocacy center in an unrelated matter. S.D. seemed "very scared" about telling her. Mother was "in shock" but did not report what S.D. told her because S.D. said she would kill herself. After Mr. Cruz-Banegas began living with them, S.D. told Mother "a little bit more." Again, Mother did not report what S.D. told her because she was afraid S.D. would harm herself. She did not confront Mr. Cruz-Banegas because she "didn't want him to be mad."

At some point after S.D.'s second disclosure, Mother got a call telling her she was required to take S.D. for a forensic interview.[1] Mother felt "ashamed" and was prepared "to be charged" for "[n]ot protecting my daughter" and "[f]or allowing him to move in." She testified:

> Q. Looking back on it, how do you feel about allowing the defendant to move into your home with you?
>
> A. Biggest mistake I ever made. I thought I was doing the right thing. I don't know.
>
> Q. [Mother], let's talk a little bit about [S.D.] as a kid. Okay? Do you need a couple minutes?
>
> A. (Moves head up and down.)

---

[1] Mother stated the call came after her other daughter attended a therapy session at the children's advocacy center. The record does not show S.D. told anyone other than Mother about Mr. Cruz-Banegas's sexual abuse.

Q. All right.

A. I'm sorry.

Q. It's okay.

THE COURT: [Prosecutor], do you want to take a recess so that she can control yourself [sic]. We can't have this in front of the jury.

[PROSECUTOR]: Judge, I think that—you okay? We just have a couple more questions. I think we can power through.

THE COURT: All right.

[DEFENSE COUNSEL]: May we approach?
. . . .
(Off-the-record discussion.)

THE COURT: Try to control yourself, ma'am.

THE WITNESS: Yes, sir.

Mother finished testifying without any further issues. Then, the trial court announced a recess and excused the jury from the courtroom. Defense counsel stated:

> I wanted to object to the continuation of testimony by [Mother]. Her outburst of tears and grief, I believe, inflamed the passions of this jury. I'm also moving for a mistrial, Your Honor. I don't see that that level of prejudice that that created in any way, shape, or form can be remedied with instructions or anything of that matter, Your Honor. So, I'm objecting to it and making my offer of proof on that, as well as moving for a mistrial based on her emotional outburst.

The trial court denied the motion for mistrial. Also, the trial court told the State to "control your witnesses" and "get them prepped up for this" because "I don't want the jury to make their decisions based on crying witnesses. I want them to do it based on the truth."

## Evidentiary sufficiency

In reviewing the sufficiency of the evidence, we examine the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard accounts for the factfinder's duty to resolve conflicts in the evidence, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury is the sole judge of the weight and credibility to be given to the testimony. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a young child. *See* TEX. CODE CRIM. PROC. art. 38.07(a); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.).

A person commits the offense of continuous sexual abuse of a young child if (1) during a period of thirty days or more, the person commits two or more acts of sexual abuse and (2) at the time each act is committed, the actor is seventeen years of age or older and the victim is a child younger than fourteen. TEX. PENAL CODE § 21.02(b). Acts of aggravated sexual assault and indecency with a child qualify as "sexual abuse" under the statute. *Id*. § 21.02(c); *see also id*. § 22.021(a) (person commits aggravated sexual assault if he intentionally or knowingly causes penetration of sexual organ of child under fourteen by any means or causes anus of

child under fourteen to contact sexual organ of another person); *id*. § 21.11 (person commits indecency with a child if he engages in sexual contact with child under seventeen or causes child under seventeen to engage in sexual contact, including touching genitals). The jury need not agree unanimously on which specific acts of sexual abuse occurred or the exact date of those acts. *Id*. § 21.02(d).

We begin with Mr. Cruz-Banegas's second issue, in which he contends the evidence is "legally and factually insufficient" to support his conviction. He asserts "there was a significant delayed outcry by the complainant, a complete lack of physical evidence, and no independent witness or witnesses, or corroborating evidence."[2]

S.D. testified that (1) while she was under fourteen years old and Mr. Cruz-Banegas was over seventeen, he penetrated her vagina with his finger, contacted her anus with his penis, caused her hand to contact his genitals, and contacted her vagina with his hand, and (2) his final act of sexual abuse occurred about a year after his first act of sexual abuse. That testimony was sufficient to support his conviction. *See* TEX. CODE CRIM. PROC. art. 38.07(a); *Garner*, 523 S.W.3d at 271. The forensic

---

[2] Mr. Cruz-Banegas acknowledges that factual sufficiency review was abolished in *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.), but he "submits there is a good faith basis to modify the existing law such that factual sufficiency review should be reinstated." Whether there is any merit to that argument is not for us to decide. *See Mixon v. State*, No. 05-20-00391-CR, 2022 WL 202960, at *3 (Tex. App.—Dallas Jan. 24, 2022, pet. ref'd) (mem. op., not designated for publication). We are bound by the court of criminal appeals's precedent and we decline to accept Mr. Cruz-Banegas's invitation to deviate from it. The court of criminal appeals has instructed that we must "review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single sufficiency standard set out in *Jackson v. Virginia*." *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013).

interviewer saw no "red flags" or signs of coaching or exaggeration during S.D.'s outcry. On this record, we conclude a rational jury could have found beyond a reasonable doubt that Mr. Cruz-Banegas committed continuous sexual abuse of a young child. *See Jackson*, 443 U.S. at 319; *see also Foster v. State*, No. 05-14-01186-CR, 2015 WL 8039901, at *2 (Tex. App.—Dallas Dec. 7, 2015, no pet.) (mem. op., not designated for publication) (stating that lack of corroboration of sexual abuse and significance of complainant's silence were issues of weight and credibility to be resolved by jury).

### Denial of mistrial

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Whether an error requires a mistrial must be determined by the particular facts of the case. *Id*.

We review a trial court's denial of a mistrial for an abuse of discretion. *Id*. We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id*. The ruling must be upheld if it was within the zone of reasonable disagreement. *Id*.

Most appellate complaints must be preserved by a timely request for relief at the trial level. *Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013). The "traditional and preferred procedure" for seeking relief at trial for a complaint that must be preserved is "(1) to object when it is possible, (2) to request an instruction

to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient." *Id.* at 98–99 (quoting *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004)). "The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been 'cured' by such an instruction." *Young*, 137 S.W.3d at 70; *see also Ocon*, 284 S.W.3d at 885 ("Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative.").

"[A]n outburst from a bystander or witness which interferes with the normal proceedings of a trial will not result in reversible error unless the defendant shows that a reasonable probability [exists] that the conduct interfered with the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010) (cleaned up). "In the context of such outbursts, the trial judge's instructions to disregard are generally considered sufficient to cure the impropriety because it is presumed that the jury will follow those instructions." *Id.*; *accord Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

In his first issue, Mr. Cruz-Banegas contends the trial court abused its discretion by not granting his motion for mistrial "after the complainant's mother had a highly prejudicial outburst while testifying." He asserts he was deprived of his constitutional right to a fair trial "given that an impartial verdict could not be reached

flowing from [Mother's] outburst." He also argues the trial court's failure to grant a mistrial "was compounded by failing to instruct the jury to disregard her outburst."

Mr. Cruz-Banegas cites no authority, and we have found none, requiring a trial court to sua sponte provide an instruction to disregard in these circumstances. Because he did not ask for an instruction to disregard before moving for a mistrial, Mr. Cruz-Banegas must establish that an instruction to disregard would not have cured any potential prejudice resulting from the outburst. *See Ocon*, 284 S.W.3d at 885; *Young*, 137 S.W.3d at 70. This burden is met when the record shows the outburst was of such a nature that the jury could not follow an instruction to disregard it. *Coble*, 330 S.W.3d at 293.

The record shows Mother's outburst was brief and occurred when she was talking about her perceived mistake as a parent. She apparently began crying but responded promptly to the trial court's statement that she needed to control herself and "[w]e can't have this in front of the jury." She was able to compose herself without a recess and continued testifying without further incident. Other courts have found similar or more extreme outbursts to be curable with an instruction to disregard. *See Gamboa*, 296 S.W.3d at 580 (concluding murder defendant was not entitled to mistrial based on outburst by victim's family member shouting "You did this for 200 dollars?" during prosecution witness's testimony, where trial court instructed jury to disregard); *Brown v. State*, 92 S.W.3d 655, 661 (Tex. App.—Dallas 2002) (concluding murder victim's father's outburst of "sobbing" and stating "Give

–12–

my son justice, please" during his testimony in murder trial was cured by trial judge's instruction to disregard), *aff'd on other grounds*, 122 S.W.3d 794 (Tex. Crim. App. 2003); *Miles v. State*, No. 06-21-00120-CR, 2022 WL 837961, at *1–2 (Tex. App.—Texarkana Mar. 22, 2022, no pet.) (mem. op., not designated for publication) (concluding no abuse of discretion in denying mistrial based on outburst of loud "wailing" in courtroom by murder victim's mother when graphic photographs were shown, where trial court instructed jury to disregard); *see also Coble*, 330 S.W.3d at 290–93 (concluding mistrial not necessary where trial court instructed jury to disregard two punishment witnesses' emotional outbursts of crying and expletives).

Here, we cannot conclude the record establishes that an instruction to disregard would not have cured any potential prejudice resulting from the complained-of outburst. *See Coble*, 330 S.W.3d at 292. Thus, the trial court did not abuse its discretion by denying the motion for mistrial. *See Ocon*, 284 S.W.3d at 884–85; *Young*, 137 S.W.3d at 70.

We affirm the trial court's judgment.

210256f.u05
Do Not Publish
Tex. R. App. P. 47.2(b)

/Cory L. Carlyle/ 
CORY L. CARLYLE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KENNETH SAID CRUZ-
BANEGAS, Appellant

No. 05-21-00256-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 401-81093-
2019.
Opinion delivered by Justice Carlyle.
Justices Myers and Goldstein
participating.


Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 23rd day of June, 2022.